**John DOE, a minor child, by Jane ROE, his mother and next friend, et al., Plaintiffs,**

v.

**NEW PHILADELPHIA PUBLIC SCHOOLS BOARD OF EDU-CATION, et al., Defendant.**

No. 5:97 CV 0108.

United States District Court, N.D. Ohio, Eastern Division.

March 12, 1998.

Douglas J. O'Meara, Michael R. Puterbaugh, O'Meara Law Offices, New Philadelphia, PA, for plaintiffs.

Michael J. Spetrino, Garlock, Laybourn & Lindenberger, Akron, OH, for New Philadelphia, PA, Public Schools Board of Education, defendants.

Vicki L McCune, Uhrichsville, pro se.

R.A. Mowbray, Newcomerstown, PA, for Vicki L. McClune, defendant.

### Order

SAM H. BELL, District Judge.

Now before the court are the parties cross-motions for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56. The underlying action was commenced by Plaintiff Jane Roe on behalf of her son, John Doe, a minor, in the wake of a sexual relationship which occurred between Doe and Vicki McCune, Doe's teacher at Welty Middle School and an employee of the New Philadelphia Public Schools Board of Education ("New Philadelphia"). In her complaint, Ms. Roe alleges that New Philadelphia discriminated against Doe: (1) by adopting a policy or custom of deliberate indifference to interferences with Doe's constitutional rights in violation of 42 U.S.C. § 1983; (2) by subjecting Doe to a hostile educational environment in violation of Title IX, 20 U.S.C. § 1681; and (3) by displaying reckless indifference to Doe's welfare which directly and proximately caused compensable injuries to Doe and Roe in violation of Ohio state law. (Docket # 1.) Defendant New Philadelphia now asks the court to dismiss the case on its assertion that Plaintiffs have failed to produce any genuine issues of material fact with respect to each of their claims. (Docket # 16.) Plaintiffs move for summary judgment on the basis of an equal (and opposite) assertion regarding Defendant. (Docket # 15.)

The court has considered the evidence and arguments of the parties, and has reached the following conclusions. First, the court finds that Plaintiffs have failed to raise any genuine issues of material fact regarding their § 1983 claim. Plaintiffs have not shown that New Philadelphia has adopted any custom or policy which caused Doe's constitutional rights to be violated by Ms. McCune. Partial summary judgment is granted to the Defendant on this claim, which is hereby dismissed. Second, the court finds that Plaintiffs *have* presented a genuine issue of material fact regarding their Title IX claim. Applying a Title VII burden shifting analysis, as the Sixth Circuit has instructed the district courts to do in these cases, the court finds that Plaintiffs have produced sufficient evidence to survive summary judgment, entitling them to bring their hostile educational environment case before a jury. Defendant's motion for summary judgment, therefore, is denied on this claim, which will proceed to trial. Third, with respect to Plaintiff's state law tort claims, the court finds that New Philadelphia does not enjoy statutory sovereign immunity under Ohio Revised Code § 2744. That provision states that a political subdivision is not liable in damages in a civil action for injury to persons allegedly caused by "any act or omission of the political subdivision or any employee of the political subdivision in connection with a governmental or proprietary function" but allows the subdivision to be sued where "liability is expressly imposed upon the political subdivision by" another

section of the Revised Code. Summary judgment, then, is denied on the state law claims.

With respect to Plaintiffs' motion for summary judgment, the only surviving claims in this case are Plaintiffs' Title IX claim alleging a hostile educational environment and Plaintiffs' state law claims alleging reckless indifference. The court finds that Defendants have produced sufficient evidence to create genuine issues of material fact with regard to these claims. Defendants, therefore, survive Plaintiffs' motion for summary judgment on the Title IX and state law claims, which motion is hereby denied. These claims shall be set for jury trial.

The court's reasoning in these matters is set out more fully below.

## Background

In the second semester of the 1994–95 school year, John Doe, then fourteen years old, was placed in the Severe Behavior Handicap class (the "SBH Program") at the Welty Middle School in the New Philadelphia School District. (Doe dep. p. 15.) His teacher in the SBH Program was Vicki McCune. (*Id.* at 28.) Doe has testified that, during April and May of 1995, he and Ms. McCune became involved in a sexual relationship.

A brief retelling of the alleged sexual contacts between McCune and Doe is, unfortunately, necessary to provide context to the legal questions raised in the motions for summary judgment. The court regrets the necessity of commenting on the indelicate facts and circumstances herein described, but sees no way to avoid republishing them at this time.

The first instance of sexual contact, as reported by Doe, occurred during April of 1995, when the rest of the eighth grade class was on a class trip away from school. (*Id.* at 48.) Doe was not allowed to go on the trip because of behavioral problems, and was alone in the SBH room when Ms. McCune asked him if he would like to go down to the gym to play basketball. (*Id.* at 48.) The two went down to the empty gym together, and Ms. McCune kissed him on the lips. (*Id.* at 44.) Following this incident, while the rest of the class was still away, McCune took Doe out for lunch for approximately two or three days in a row, and each day the two kissed while they were in McCune's car. (*Id.* at 57.) When the class returned from the trip, McCune and Doe would kiss and touch each other in the SBH room when no one else was present. (*Id.* at 68.) Eventually, McCune and Doe began taking car rides together after school, and they ultimately had sexual intercourse three times in McCune's car on a deserted back road. (*Id.* at 72–75.) The sexual relationship ended when the school year ended in the May. (*Id.* at 75.) Months later, during the summer of 1995, McCune located Doe and reported to him that she was pregnant, that he was the father, and that she intended to have an abortion. (*Id.* at 77.)

Doe apparently described his relationship with McCune to his cousin, who, in turn, told Doe's grandmother. In August of 1995, Doe's grandmother told Jane Roe. (Roe dep. pp. 4–5.) Ms. Roe called Georgia Banks, the principal at Welty Middle School. (*Id.* at 7.) Plaintiffs met with school administrators on August 22, 1995. On that date, school officials contacted the Department of Human Services and the New Philadelphia Police Department to report what they had learned. (Banks Aff. ¶ 14.) Criminal charges were filed against Ms. McClune, and she ultimately pleaded guilty to two counts of sexual battery. *State of Ohio v. Vickie Lynn McCune*, No. 96–CR–010029 (Court of Common Pleas, Tuscarawas County, Sept. 11, 1995). The Ohio Department of Education subsequently revoked her teaching certificate, and she ceased to be employed in the New Philadelphia City School District. (Banks Aff. ¶ 14.)

Plaintiffs' basic contention in this law suit against New Philadelphia is that school officials had reason to believe that Ms. McCune was engaging in improper sexual activity with her students both prior to and during Ms. McCune's relationship with John Doe, but did not respond sufficiently to prevent additional violations by Ms. McCune. It is Plaintiff's further contention that New Philadelphia's inaction represents a neglect of statutory and constitutional duties owed to John Doe as a minor and a student of New Philadelphia School District, and that such inaction directly and proximately caused

John Doe to suffer injuries and/or additional injuries as a result of the sexual advances of McCune in April and May of 1995.

It is undisputed by all parties that John Doe was harmed by Ms. McCune's advances, and it is equally undisputed that Ms. McCune grossly abused her role as teacher and role-model at the expense of a child's emotional well-being. Despite the fact that Ms. McCune's conduct shocks the conscience, the court must have tunnel vision. The question now before us, and ultimately for the jury, is and will be whether *New Philadelphia* is specifically liable for that harm.

Plaintiffs direct the court's attention to two specific instances in which New Philadelphia officials were made aware of, and failed to respond sufficiently to, allegations of impermissible sexual behavior on the part of Ms. McCune toward her students.

Plaintiffs first point to the January 20, 1995 report of SBH student J.T. Milius that he witnessed Ms. McClune kissing Bobby Foster, another student, in the back of the SBH room. (Banks Aff. ¶ 6, Milius Aff. ¶ 1.) This information was reported to Welty Principal Georgia Banks and school psychologist Nancy Potosky. (Banks Aff. ¶¶ 6–9, Potosky dep. pp. 29–34.) Despite the fact that Ohio Revised Code § 2151.421 and New Philadelphia policy require that school officials report any known or suspected abuse, neglect, physical or mental injury to a social services or law enforcement agency, Ms. Banks and Ms. Potosky chose to deal with J.T. Milius' report internally. (Banks Aff. ¶¶ 6–9, Potosky dep. pp. 29–34.) When questioned, Ms. McCune denied the incident, and Ms. Banks decided that Milius' allegations were untrue. (Banks Aff. ¶ 9.) Milius was suspended from school for 5 days for making false allegations about a teacher. (Milius Aff. ¶ 6.) Bobby Foster later stated in a police statement and in his deposition that Milius' allegations were true; that Ms. McCune had kissed him in the SBH room. (Foster Dep. p. 10, Plaintiffs' Exhibit 23.)

Plaintiffs next point to the May 12, 1995 report by classroom aide Denise Sisson that Ms. McCune gave John Doe preferential treatment in the classroom and that she had witnessed Ms. McCune leaving the school grounds with Doe on 8 separate occasions in April and May of 1995. (Banks Aff. ¶ 10, Sisson Aff., Banks dep. pp. 35–37.) Rather than reporting the allegations to social services or local law enforcement, Ms. Banks decided to question Ms. McCune about the incident herself. (*Id.*) Ms. McCune ultimately admitted that she had gone to lunch with Doe, and was issued a written warning for leaving school grounds with a student without parental permission in violation of the school building code. (*Id.* at ¶ 12.) Plaintiffs contend that, in light of the earlier allegations made by J.T. Milius, Banks should reasonably have been suspicious about the possibility of sexually inappropriate behavior on the part of McCune in connection with these lunch dates. As such, Plaintiffs contend that Banks should have reported these incidents to a social services or law enforcement agency without delay. Defendant, on the other hand, contends that in light of the fact that Milius' allegations were dismissed as untrue, Ms. Banks was only reasonably aware of violations of the school building codes, and had no cause to believe that there was anything sexual about the relationship between McCune and Doe.

Having set out the essential facts in this matter, the court may now apply the relevant legal standards to each of Plaintiffs' claims and consider the cross-motions for summary judgment in that context.

### Standard of Review

The Court of Appeals for the Sixth Circuit recently summarized the standard of review governing motions for summary judgment under Federal Rule of Civil Procedure 56:

Summary judgment is appropriate where 'there is no genuine issue of material fact . . . and the moving party is entitled to judgment as a matter of law.' . . . . [The] court must view all facts and inferences drawn therefrom in the light most favorable to the non-moving party.

The moving party has the burden of conclusively showing that no genuine issue of material fact exists. Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with

some probative evidence to support its claim.

'By its very terms, this standard provides that the existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict in favor of the nonmoving party. If the disputed evidence 'is merely colorable or is not significantly probative, summary judgment may be granted.'

*Leo LaPointe v. United Autoworkers· Local 600,* 8 F.3d 376, 378 (6th Cir.1993) (citations omitted). With this standard in mind, the court shall analyze the Defendant's motion for summary judgment.

## Law and Analysis

### I.

#### 42 U.S.C. § 1983

42 U.S.C. § 1983 states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ In order to proceed on a claim against a municipal school board for relief under 1983, a plaintiff must assert: (1) that there has been a deprivation of a constitutional right, and (2) that the school board is responsible for that violation. *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1065–66, 117 L.Ed.2d 261 (1992).

■ In the present case, Plaintiff asserts that John Doe's due process rights under the Fourteenth Amendment were abridged when his public school teacher made sexual advances toward him. The Sixth Circuit, in accordance with all other circuits to have addressed the question, has clearly stated that this is a cognizable deprivation of a constitutional right:

a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. The substantive component of the Due Process Clause protects against abusive governmental power as exercised by a school.

*Doe v. Claiborne County Board of Education,* 103 F.3d 495, 506 (6th Cir.1996) (citations omitted); *Stoneking v. Bradford Area School District,* 882 F.2d 720, 726 (3d Cir. 1989); *Doe v. Taylor Independent School District,* 15 F.3d 443, 451 (5th Cir.1994); *Abeyta v. Chama Valley Independent School District,* 77 F.3d 1253, 1255 (10th Cir.1996).

■ Plaintiffs have more difficulty establishing, however, that New Philadelphia is liable for this deprivation under § 1983, for it is well-settled law that a theory of *respondeat superior* under which an employer is vicariously liable for the torts of its employees within the scope of the business—is not available as a theory of recovery under that section. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Instead, Plaintiffs must show that the School Board *itself* is liable for the deprivation. *Collins,* 503 U.S. at 122, 112 S.Ct. at 1067. This requires a showing that the Board has either: (1) adopted an official policy or (2) specifically tolerated a pervasive custom, which directly caused the deprivation at issue. *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 922–923, 99 L.Ed.2d 107 (1988).

■ In the case at bar, Plaintiffs argue that New Philadelphia officials' decisions to deal with allegations of sexual misconduct internally rather than reporting such allegations to the proper authorities as required by Ohio law constitutes a custom of inaction which directly led to John Doe's injuries at the hands of Ms. McCune. Defendant argues that the mistakes made by Georgia Banks

and Nancy Potosky were simply that—*mistakes*, and as such do not in any way represent a widespread policy or tolerated custom regarding the treatment of allegations of sexual misconduct in the New Philadelphia School District. Both parties cite the recent Sixth Circuit case of *Doe v. Claiborne County Board of Education*, 103 F.3d 495 (6th Cir.1996), which the court agrees is dispositive on this issue.

In *Claiborne County*, a fourteen year old high school student was sexually molested by her physical education teacher, Jeff Davis. *Id.* at 500. Davis had a documented history regarding allegations of sexual misconduct with students, of which school officials were aware prior to the incidents occuring between Davis and the young girl. *Id.* Plaintiff in that case brought a 1983 action against the School Board, alleging a custom of inaction in response to allegations of sexual misconduct, based upon the following facts: (1) that there had been a prior allegation that Jeff Davis had inappropriately touched a student, which allegation was dismissed by school officials following a discussion with Davis, (2) that, following Davis' removal from his position in relation to charges of sexual misconduct, he was allowed to begin working for the school district again before those charges were considered by the School Board, which constituted a violation of school policy, (3) that, following a social services investigation of Davis regarding numerous allegations of sexual misconduct with students, the School Board opted to rehire Davis on the grounds that none of the allegations had been proven to be "founded." *Id.* at 501–503. The Sixth Circuit held that these facts were insufficient to establish an impermissible custom within Defendant School District:

> The evidence Doe advanced does not show that the School Board, as an official policymaking body, had a 'custom' that reflected a deliberate, intentional indifference to the sexual abuse of its students. It may be freely conceded that the board members, individually, might have been recklessly passing in the performance of their duties. One could even argue that they were reckless in their failure, collectively, to inquire further into the allegations lodged against Davis and/or to clarify the results of the DHS investigation. It cannot be said, however, that their failure to act in Davis's case was the direct result of a custom in the sense that the School Board consciously never acted when confronted with its employees egregious and obviously unconstitutional conduct.

*Id.* at 508.

Similarly, in the present case, the court is not of the opinion that Plaintiffs have established a custom on the part of New Philadelphia regarding the intentional, deliberate, or even reckless dismissal of allegations of sexual misconduct on behalf of its employees. To be sure, with the clarity of 20–20 hindsight it can be said that Ms. Banks and Ms. Potosky's investigative and preventative measures in response to the allegations against Ms. McCune were grossly insufficient. It can even be said in light of J.T. Milius' prior allegations that Ms. Banks was reckless for not raising an antenna when she heard that Ms. McCune was leaving the building with a minor student. These two incidents of neglectful conduct on the part of two New Philadelphia officials are troubling, but they do not rise to the level of a custom within the district, and certainly do not implicate the School Board in any way. Plaintiff is therefore unable to make out a crucial element of a 1983 claim under these circumstances, and summary judgment must be awarded to Defendant New Philadelphia. Plaintiff's 1983 claim is dismissed.

## II.

### *Title IX*

■ 20 U.S.C. § 1681 states that, "[n]o person in the United States shall, on the basis of sex, be … subjected to discrimination under any education program or activity received Federal finanical assistance …." In *Claiborne County*, the Sixth Circuit held that: (1) a "hostile environment" sexual harassment claim is cognizable under Title IX; (2) the elements to state a supervisory hostile environment claim under Title VII equally apply under Title IX; and (3) whether conduct about which plaintiff complains created a "hostile environment" under Title IX, and whether the educational entity took

appropriate action after knowing of inappropriate conduct, are factual questions for the jury to resolve. *Claiborne County*, 103 F.3d at 515 (citations omitted). The court's mandate, then, is clear: it must analyze Plaintiffs' factual showing according to the standards fashioned by courts in consideration of hostile environment questions under Title VII, and must allow any close factual questions to be resolved by the jury.

█ Courts interpreting Title VII have recognized two types of workplace sexual harassment as constituting discrimination on the basis of sex: quid pro quo harassment, in which a supervisor requests sexual favors in exchange for job benefits, and "hostile work environment" harassment, in which a pervasive atmosphere of sexual harassment creates an objectively hostile work environment. *Blankenship, et al. v. Parke Care Centers, Inc., et al.*, 123 F.3d 868, 1997 U.S.App. LEXIS 22365 (6th Cir.1997) (citing *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 618–19 (6th Cir.1986)). Plaintiffs have alleged the hostile work environment strain of sexual harassment. Hostile work environment cases distinguish between harassment by supervisors (teachers) and harassment by co-workers (fellow students). *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803–04 (6th Cir.1994).

█ To prevail in a hostile environment action involving alleged sexual harassment by a supervisor / teacher, Plaintiffs must assert and prove that: 1) John Doe was a member of a protected class; 2) he was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 3) the harassment complained of was based upon sex; 4) the charged sexual harassment had the effect of unreasonably interfering with his school performance and created an intimidating, hostile, or offensive educational environment that affected seriously his psychological well-being; and 5) the existence of agency liability on the part of New Philadelphia, such that the act(s) complained of took place in the scope of the agents' employment. *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 183–184 (6th Cir. 1992) (citing *Rabidue*, 805 F.2d at 619–20).

█ First, Plaintiff John Doe is clearly a member of a protected class under these circumstances. As the court pointed out in *Claiborne County*, a student has the right under the Fourteenth Amendment Due Process Clause to be protected from sexual advances at the hands of a public school employee. Second, Plaintiffs have produced ample evidence that Doe was subjected to sexual harassment in the form of sexual advances and other verbal or physical conduct of a sexual nature. Neither party has alleged that Ms. McCune's sexual advances were "welcomed" and in fact it may be said that Doe was legally incapable of consenting to Ms. McCune's advances based on his status as a minor and her student. After all, Ohio Revised Code § 2907.03(A)(8) criminalizes any sexual relations between teachers and their minor students. Third, the sexual nature of the actions referred to above is undeniable. Fourth, it can hardly be said that the charged sexual harassment did not have the effect of unreasonably interfering with Doe's school performance and of creating an intimidating, hostile, or offensive working environment that affected seriously his psychological well-being. Doe was forced to continue to come to school and to attempt to learn from a woman with whom he was having sexual relations at the age of 14. Moreover, Doe was forced to deal with the emotional ramifications of fathering a child and dealing with the abortion of the fetus at a time when he could not have been prepared to deal with such an event. The court finds that Plaintiffs' evidentiary showing is sufficient to establish the fourth prong of the test for sexual harassment, at least for the purpose of surviving Defendant's motion for summary judgment.

█ Finally, Plaintiffs have shown that the acts complained of took place within the scope of the Ms. McCune's employment. Ms. McCune was clearly an agent of New Philadelphia when the events described above occurred. It should be noted, however, that "agency liability is not strict and can be negated if the employer responds adequately and effectively once it has notice of the actions." *Kauffman*, 970 F.2d 178 at

184. Plaintiffs have, at the very least, created a genuine issue of material fact regarding the effectiveness of New Philadelphia's response to Ms. McCune's inappropriate sexual activity. For some reason, Ms. Banks decided that J.T.Milius was being untruthful when he reported that he had witnessed Ms. McCune kissing Bobby Foster. Ms. Banks clearly erred in this regard, because Milius' account was later corroborated by Foster himself. In the court's estimation, Ms. Banks' error alone might suffice to allow a jury to conclude that her investigation into the allegations raised by Milius was not effective. However, there is more to this case than Ms. Banks' erroneous investigation. Ms. Banks also violated New Philadelphia policy and Ohio law by failing to report the allegations of sexual abuse to the proper authorities.

New Philadelphia policy states that:

The Superintendent shall develop procedures for compliance with the statutory requirements that instances of child abuse and neglect be reported. Such procedures shall inform all staff members having contact with students of their responsibility to report all cases of abuse, abandonment, cruelty or neglect resulting in physical or mental injury to students of the District; designate the principal as the staff member who shall report suspected District instances of child abuse to the County Children Services Board and require that a copy of such report be given to the District placement team for information and follow up.

Ohio Revised Code § 2151.421 states that: No ... school employee ... who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age ... has suffered or faces a threat of suffering any physical or mental wound, injury, disability or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report or cause reports to be made of that knowledge or suspicion to the children services board, the county department of human services exercising the children services function, or a municipal or county peace officer ....

It seems apparent to the court that Ms. Banks breached both of these duties when she opted to conduct an internal investigation in regard to allegations against Ms. McCune rather than reporting the alleged sexual misconduct to social services or law enforcement authorities.

Even if Ms. Banks was not in error for dismissing J.T. Milius' allegations against Ms. McCune, it appears to the court that she should have been particularly sensitized to potential problems with Ms. McCune by the time Denise Sisson made her aware that McCune was seen leaving campus with John Doe. A reasonable response, in the court's estimation, would have to connect Milius' allegations about sexual abuse with the inappropriate activity of taking John Doe out to lunch. The inference that Ms. Banks should have drawn, then, would have led her to report her suspicions about sexual abuse to the proper authorities.

At the very least, Plaintiffs have survived Defendants' motion for summary judgment on their hostile environment claim under Title IX. Similarly, Defendants have presented sufficient questions about the appropriateness of school officials' responses that the issue should be left to the jury to decide. Plaintiffs' Title IX claim shall be decided in a jury trial.

### III.

*Sovereign Immunity under Ohio Law*

■ Ohio Revised Code § 2744.02(A)(1) provides, in pertinent part, that "except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Defendant argues that New Philadelphia is immune from suit under this provision. The court does not agree. As the Ohio Court of Appeals stated in *Crago v.Lorain County Commissioners,* 69 Ohio App.3d 24, 26, 590 N.E.2d 15, 17 (1990):

R.C. 2744.02(B)(5) allows a political subdivision to be held liable for its actions when

another section of the Revised Code expressly imposes such liability. R.C. 2744.03(A)(6)(c) allows such liability for the employee. By virtue of the express grant of limited immunity in R.C. 2151.421(G), there is an express recognition that liability can be imposed on an agency or individual for other, excluded conduct. Therefore, a claim that a children services board and its employees failed to properly investigate an instance of alleged child abuse pursuant to duties imposed by R.C. 2151.421 is not subject to the general immunity granted to political subdivisions by R.C. 2744.02(A), or to the immunity granted to employees by R.C. 2744.03(A)(6).

The court would apply a similar analysis to the case at bar. Immunity does not apply to New Philadelphia with regard to Plaintiffs' claims that New Philadelphia officials failed to observe statutory duties under Ohio Revised Code § 2151.421. Plaintiffs' state law claims may proceed.

### Conclusion

For the reasons mentioned above, Defendant's motion for summary judgment is granted with respect to the 1983 claim, which is hereby dismissed. With respect to the Title IX and state law claims, Defendant's motion is denied. Plaintiff's motion for summary judgment is denied in its entirety. All remaining claims shall be set forth for final pre-trial on Monday, May 18th at 10:30 a.m. with trial by jury to begin on Tuesday, May 26 at 8:00 a.m. The court will expect all parties to be prepared to proceed with trial on the above mentioned date.

IT IS SO ORDERED.