McKEE, Circuit Judge,
concurring:
I agree that the District Court’s grant of summary judgment to the defendants should be affirmed. I write separately, however, to amplify my understanding of what we hold today, because I am concerned that our decision may be interpreted too broadly, and thereby result in an unjustified extension of County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).
*172 The mere fact that force may have been used while effectuating an arrest does not automatically establish that the force was “in relation” to a legitimate object of the arrest under a § 1983 analysis. Davis must lose here, not because the challenged force occurred “in relation to” a high-speed chase, but because his allegations of a substantive due process violation are rooted in negligence and allege, at most, a reckless disregard of safety. That is clearly insufficient under Lewis. However, I believe the evidence here, taken in the light most favorable to the plaintiff, could support allegations of an intentional ramming of the Acura Cook was driving. Had Davis alleged such intentional conduct, I do not think his suit would be appropriate for summary judgment under Lewis.
I.
Paragraph 13 of the Complaint states: “plaintiff ... alleges that the police vehicle either struck the 1993 Acura ... or chased such vehicle at such a high rate of speed so as to cause the (stolen) vehicle to collide with other vehicles, setting off a chain reaction.... ” Paragraph 14 alleges that the pursuing officers were: “grossly negligent and [acted] with reckless and willful disregard for the safety of others ...” in commencing and continuing the chase. Paragraph 18 alleges that the pursuing officers “either operated their vehicles in a negligent fashion, or permitted their vehicles to be operated in a negligent fashion such negligence being a contributing factor in the ... collision .... ” (emphasis added). Paragraph 21 alleges “the police chase ... was knowingly improper and with wilful and/or reckless disregard for public safety and/or against established police guidelines and was engaged in with wanton, wilful and reckless disregard for the safety of Davis and other persons and continued in such a manner as to shock the conscience of any reasonable person.”
As the majority correctly points out, Lewis requires more. There, the Supreme Court held that absent “an intent to harm suspects physically or to worsen their legal plight” there could be no liability for a substantive due process violation in the § 1983 context. Lewis, 118 S.Ct. at 1720. It is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that “shocks the conscience” and gives rise to liability under § 1983 for injuries arising out of a high-speed chase. Id. at 1717 (“conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level”). See also Maj. Op. at 171. Here, as in Lewis, the “complaint alleges a variety of culpable states of mind: negligently responsible ... reckless, gross negligence and conscious disregard for [the plaintiffs] safety ... and oppression fraud and malice. The subsequent summary judgment proceedings revealed that the height of the fault actually claimed was conscious disregard ...” Id. at 1720. That is simply not sufficient.
In Lewis the Court was careful to note that the pursuing officers may have acted imprudently, even recklessly, but that the evidence did not support a conclusion that they intended to “terrorize, cause harm, or kill” the decedent. Id. at 1708. In fact, there the uncontradicted evidence was that the police car skidded over 140 feet trying to stop once the police saw that the fleeing motorcycle had crashed. That is, “the chase ended when the pursued motorcycle tipped over, throwing Lewis to the pavement where the police car coming to a stop accidentally skidded into him causing his injury.” Maj. Op. at 170 (emphasis added). The fatal injuries sustained by Lewis were clearly a tragic, unintended result of the high-speed pursuit. There were no allegations that the police deliberately ran the decedent over or rammed the motorcycle.
Here, if the record supported a finding that police gratuitously rammed Cook’s car, and if plaintiff properly alleged that they did so to injure or terrorize Cook, *173 liability could still attach under Leims. Thus, for example, if plaintiff alleged (and a fact finder could reasonably conclude) that the officers rammed Cook to “teach him a lesson” or to “get even” for subjecting them to the dangers of such a chase, Lewis would not shield the officers from liability even though they were ultimately effectuating an arrest. However, the District Court held that under Lewis a plaintiff must also provide evidence of a purpose to cause harm “independent of the process of stopping the suspect.” Order at 9-10. I do not believe that is supported by Lewis. If police officers decided to stop a fleeing suspect by inflicting spinal cord injury in the hopes that the suspect would never walk again, the application of such force would not be truly “independent of the process of stopping the suspect.” Nevertheless, their intent to harm, injure or terrorize the suspect might well shock the conscience and subject them to liability under Lewis. Thus, I do not read the majority opinion as holding that police can use any amount of force during a high speed chase no matter how tenuously the force is related to the legitimate law enforcement objective of arresting the fleeing suspect.
It has long been established that law enforcement officials may not act in a manner that “shocks the conscience” even when their actions relate to the otherwise legitimate object of obtaining credible evidence or prosecuting criminal behavior. Rochin v. People of California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (pumping suspect’s stomach to obtain valuable, credible evidence of a drug crime violates due process). Neither the decision in Lewis, nor our decision here, creates a “high-speed-pursuit” exception to the fundamental obligation of law enforcement officials to respect “certain decencies of civilized conduct” even when carrying out their official duties. Lewis, 118 S.Ct. at 1717 (quoting Rochin, 342 U.S. at 173, 72 S.Ct. 205, with approval). The police in Rochin were liable because, even in the context of enforcing the law, “the Due Process Clause [is] intended to prevent government officials ‘from abusing their power, or employing it as an instrument of oppression.’ ” Lewis, 118 S.Ct. at 1716 (quoting Collins v. Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). “[I]t was not the ultimate purpose of the government actors [in Ro-chin] to harm the plaintiff, but they apparently acted with full appreciation of what the Court described as the brutality of their acts.” Lewis, 118 S.Ct. at 1718 n. 9.
Leims merely establishes that the environment in which law enforcement officers perform their duties informs the substantive due process analysis.
[W]hen unforeseen circumstances demand an officer’s instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates ‘the large concerns of the governors and the governed.’
Lewis, 118 S.Ct. at 1720. Accordingly, “high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983.” Id. If there is “reasonable justification [for their actions] in the service of a legitimate governmental objective,” they are not liable under Lewis even though they acted in a manner that was negligent or even reckless. Lewis, 118 S.Ct. at 1716. In Leims the Court stated:
[W]hile prudence would have repressed [the officer’s] reaction, the officer’s instinct was to do his job as a law enforcement officer, not to induce [the motorcycle driver’s] lawlessness, or to terrorize, cause harm or kill. Prudence, that is, was subject to countervailing enforcement considerations ... there is no reason to believe that [the police] were tainted by an improper or malicious mo *174 tive ... [3]
Id. at 1721.
By way of example, I do not think that under Lewis police would be justified in firing shots directly at the driver of a fleeing car after initiating pursuit for a minor traffic violation, knowing that the fleeing car was about to reach a dead-end or some barricade that would force the driver to stop. I believe Lewis would allow a reasonable fact finder to conclude, based on the circumstances, that the action of the apprehending officers was intended to injure or terrorize the driver, thus permitting a determination that the driver’s substantive due process rights had been violated. Such an intent to harm may be understandable given the dangers of law enforcement, but it also would be intolerable and absolutely collateral to any legitimate law enforcement objective.
II.
The majority states: “Lewis does not permit an inference of intent to harm simply because a chase eventuates in deliberate physical contact causing injury.” Maj. Op. at 171. I must respectfully disagree with the breadth of that statement. I think the validity and the strength of any such inference depends entirely, upon the totality of circumstances surrounding the contact, including the severity of the contact. The Supreme Court was careful to except from its holding cases where there was an intent to harm, terrorize or kill. I believe that there may well be those rare situations where the nature of an officer’s “deliberate physical contact” is such that a reasonable factfinder would conclude the officer intended to harm, terrorize or kill.
There often is no way to establish subjective intent, other than by the reasonable fact finder’s common sense evaluation of the circumstances. See Rock v. Zimmerman, 1991 WL 148490, *8 (3d Cir.1991) (inferring intent from circumstances is “entirely appropriate and is often the only means of proving criminal intent”). Lewis establishes as a matter of law that the circumstances of the chase at issue there were insufficient to establish the required intent. It did not abrogate the rules of deductive reasoning and common sense that juries use every day. Indeed, intent, particularly in constitutional cases, often must be inferred from circumstantial evidence. See, e.g., Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-68, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (determination of discriminatory motive requires inquiry into circumstantial evidence); Oregon v. Kennedy, 456 U.S. 667, 675, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (intent of prosecutor to subvert the protections afforded by the Double Jeopardy Clause may be inferred from objective facts and circumstances); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 693-98 (1993) (relying on circumstantial evidence to find high level officials liable for civil rights violations and recognizing that in § 1983 cases circum *175 stantial evidence “is often the best and most reliable proof of the subjective motivations for the conduct of the actors”).
Moreover, although I agree that the alleged violation of police regulations here does not advance the plaintiffs claim, see Maj. Op. at 170, I think that the violation of such regulations will sometimes be relevant. For example, here, plaintiff submitted evidence that the officers did not comply with police department guidelines and regulations for initiating and conducting high-speed pursuits. One of those guidelines characterizes such conduct as use of “deadly force” akin to firing a weapon and states that officers should engage in such contact only “as a last resort to prevent eminent death or serious injuries.” I believe a jury should be able to consider the alleged violations of department regulations, along with evidence contradicting the officers’ account of what happened, to the extent they are relevant to the officers’ intent. Defendants here have completely denied any police involvement in the accident which resulted in Davis’ injuries. The police claim that they broke off the pursuit blocks before the accident because their overhead lights had malfunctioned. However, there is strong evidence to the contrary. There is evidence that, although the overhead lights did have problems in the past, they had been repaired 24 hours before the accident. Moreover, departmental regulations require officers to check their patrol cars for equipment problems before going on patrol. The car that collided with Cook was used on the very next shift, and there is no evidence that the patrol car was taken for any repairs to its overhead lights following the accident. Finally, eye-witness accounts directly contradict the officers’ denials of involvement. Richard Hall, a disinterested bystander, submitted a sworn affidavit stating that the police car did “bump” or “hit” the Acura, possibly twice, before the Acura went out of control. Dwayne Cook, the driver of the Acura, also testified that he felt a “jerk,” which was caused by the police car bumping him. He further testified that the impact caused him to hit his head on the steering wheel and pass out.
As noted previously, none of this is relevant here because plaintiff alleges, at most, that the police acted recklessly. However, I believe such violations and conflicts in testimony would be relevant in an appropriate case as probative of a defendant’s intent.
III.
■ In conclusion, I concur in the judgment of the majority. However, as I mentioned at the outset, I write separately because I think there are subtle, and perhaps misleading, nuances arising from the decision in Lewis which merit further discussion.

. Similarly, in Fagan v. City of Vineland, 22 F.3d 1296 (3d Cir.1994), we held that "where a police officer uses a police vehicle to terrorize a civilian, and he has done so with malicious abuse of official power shocking the conscience, a court may conclude that the officers have crossed the constitutional line.” 22 F.3d at 1308. In Fagan, a police officer attempted to stop and issue a warning to the driver of a Camaro when he saw a passenger standing up through the vehicle’s open T-top roof. When the driver refused to stop, the officer commenced a high-speed pursuit through a residential neighborhood. The Ca-maro eventually ran a red light at an intersection and broad-sided a pick-up truck. The two occupants of the truck and one of the passengers in the Camaro were killed; two other passengers in the Camaro suffered crippling injuries. Because the officer's actions were reckless, but not "arbitrary, intentional, [or] deliberate,” we affirmed the trial court’s grant of summary judgment in favor of the government. Although Fagan was decided prior to the Supreme Court’s decision in Lewis, we similarly held that "where a person suffers injury as an incidental and unintended consequence of official action, the abuse of power contemplated in the due process and eighth amendment cases does not arise.” Id. at 1307 (emphasis added).