# COLLINS *v.* CITY OF HARKER HEIGHTS, TEXAS

No. 90–1279.   Argued November 5, 1991—Decided February 26, 1992

Stevens, J., delivered the opinion for a unanimous Court.

*Sanford Jay Rosen* argued the cause for petitioner. With him on the briefs were *Don Busby* and *Andrea G. Asaro.*

*Lucas A. Powe, Jr.,* argued the cause for respondent. With him on the brief were *Roy L. Barrett* and *Stuart Smith.* *

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether § 1 of the Civil Rights Act of 1871, Rev. Stat. § 1979, 42 U. S. C. § 1983, provides a remedy for a municipal employee who is fatally injured in the course of his employment because the city customarily failed to train or warn its employees about known hazards in the workplace. Even though the city's conduct may be actionable under state law, we hold that § 1983 does not apply because such conduct does not violate the Due Process Clause.

On October 21, 1988, Larry Michael Collins, an employee in the sanitation department of the city of Harker Heights, Texas, died of asphyxia after entering a manhole to unstop a sewer line. Petitioner, his widow, brought this action alleging that Collins "had a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the City of Harker Heights' custom and policy of deliberate indifference toward the safety of its employees." App. 7. Her complaint alleged that the city violated that right by following a custom and policy of not training its employees about the dangers of working in sewer lines and manholes, not providing safety equipment at jobsites, and not providing safety warnings. The complaint also alleged that a prior incident

---

*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union et al. by *Edward Tuddenham, J. Patrick Wiseman, Steven R. Shapiro, John A. Powell,* and *Helen Hershkoff;* for the Association of Trial Lawyers of America by *Jeffrey L. Needle;* and for the National Education Association by *Robert H. Chanin* and *Jeremiah A. Collins.*

*Richard Ruda, Carter G. Phillips,* and *Mark D. Hopson* filed a brief for the National League of Cities et al. as *amici curiae* urging affirmance.

had given the city notice of the risks of entering the sewer lines[1] and that the city had systematically and intentionally failed to provide the equipment and training required by a Texas statute. *Ibid.* The District Court dismissed the complaint on the ground that a constitutional violation had not been alleged. No. W–89–CA–168 (WD Tex., Oct. 30, 1988), App. 20. The Court of Appeals for the Fifth Circuit affirmed on a different theory. 916 F. 2d 284 (1990). It did not reach the question whether the city had violated Collins' constitutional rights because it denied recovery on the ground that there had been no "abuse of governmental power," which the Fifth Circuit had found to be a necessary element of a § 1983 action.[2] *Id.*, at 287–288, and n. 3.

---

[1] In particular, the complaint alleged that "[p]rior to October, 1988, the City of Harker Heights was on notice of the dangers to which the employees were exposed because Larry Michael Collins' supervisor had been rendered unconscious in a manhole several months prior to October, 1988, in fact, several months before Larry Michael Collins began work at the City of Harker Heights." App. 7.

[2] The Court of Appeals explained:

"The question presented in this case is whether a plaintiff seeking recovery under § 1983 for injury to a governmental employee must demonstrate, *inter alia*, that the conduct in issue was an abuse of *governmental* power. More particularly, does alleged wrongful conduct by government—in its capacity as employer rather than as a governing authority—that deprives its employee of an alleged constitutional right give rise to a § 1983 action? We base our holding on the abuse of government power standard, separate from the constitutional deprivation element or standard. The district court appears to have merged those two standards, which are among those necessary for bringing § 1983 into play here. In reviewing this Rule 12(b)(6) dismissal, we will keep them separate.

"In this Circuit, there is a separate standard that must also be satisfied— an abuse of government power. While this element is in many ways similar to, and often blends with, other necessary elements for a § 1983 action, such as deprivation of a constitutional right, and springs from the same sources as the deprivation element, it is separate nonetheless." 916 F. 2d, at 286–287.

The contrary decision in *Ruge* v. *Bellevue*, 892 F. 2d 738 (CA8 1989), together with our concern about the Court of Appeals' interpretation of the statute, prompted our grant of certiorari, 499 U. S. 958 (1991).

I

Our cases do not support the Court of Appeals' reading of § 1983 as requiring proof of an abuse of governmental power separate and apart from the proof of a constitutional violation. Although the statute provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law, see, *e. g.*, *Martinez* v. *California*, 444 U. S. 277 (1980); *DeShaney* v. *Winnebago County Dept. of Social Services*, 489 U. S. 189 (1989). More importantly, the statute does not draw any distinction between abusive and nonabusive federal violations.

The Court of Appeals' analysis rests largely on the fact that the city had, through allegedly tortious conduct, harmed one of its employees rather than an ordinary citizen over whom it exercised governmental power. The employment relationship, however, is not of controlling significance. On the one hand, if the city had pursued a policy of equally deliberate indifference to the safety of pedestrians that resulted in a fatal injury to one who inadvertently stepped into an open manhole, the Court of Appeals' holding would not speak to this situation at all, although it would seem that a claim by such a pedestrian should be analyzed in a similar manner as the claim by this petitioner. On the other hand, a logical application of the holding might also bar potentially meritorious claims by employees if, for example, the city had given an employee a particularly dangerous assignment in retaliation for a political speech, cf. *St. Louis* v. *Praprotnik*, 485 U. S. 112 (1988), or because of his or her gender, cf. *Monell* v. *New York City Dept. of Social Services*, 436 U. S. 658 (1978). The First Amendment, the Equal Protection and

Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections. Neither the fact that petitioner's decedent was a government employee nor the characterization of the city's deliberate indifference to his safety as something other than an "abuse of governmental power" is a sufficient reason for refusing to entertain petitioner's federal claim under § 1983.

Nevertheless, proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation. See *Oklahoma City* v. *Tuttle*, 471 U. S. 808, 817 (1985) (opinion of REHNQUIST, J.); *id.*, at 828–829 (opinion of Brennan, J., concurring in part and concurring in judgment). Because most of our opinions discussing municipal policy have involved the latter issue, it is appropriate to discuss it before considering the question whether petitioner's complaint has alleged a constitutional violation.

## II

Section 1983 provides a remedy against "any person" who, under color of state law, deprives another of rights protected by the Constitution.[3] In *Monell*, the Court held that Congress intended municipalities and other local government entities to be included among those persons to whom § 1983 applies. 436 U. S., at 690. At the same time, the Court

---

[3] The section states, in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U. S. C. § 1983.

made it clear that municipalities may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*, at 691.[4] The Court emphasized that

> "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.
>
> .  .  .  .  .
>
> "[T]herefore, . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*, at 691, 694 (emphasis in original).

In a series of later cases, the Court has considered whether an alleged injury caused by municipal employees acting under color of state law provided a proper basis for imposing liability on a city. In each of those cases the Court assumed that a constitutional violation had been adequately alleged or proved and focused its attention on the separate issue of municipal liability. Thus, for example, in *Oklahoma City* v. *Tuttle, supra*, it was assumed that a police officer had violated the decedent's constitutional rights, but we held that the wrongful conduct of a single officer without any policymaking authority did not establish municipal policy. And in *St. Louis* v. *Praprotnik*, 485 U. S. 112 (1988), without reach-

---

[4] Petitioners in *Monell*, a class of female employees of the New York City Department of Social Services and Board of Education, alleged that the board and department violated their due process rights by implementing an official policy that compelled pregnant employees to take unpaid leaves of absences before such leaves were required for medical reasons. 436 U. S., at 660–661.

ing the question whether the adverse employment action taken against the plaintiff violated his First Amendment rights, the Court concluded that decisions by subordinate employees did not necessarily reflect official policy. On the other hand, in *Pembaur* v. *Cincinnati,* 475 U. S. 469 (1986), the Court held that a county was responsible for unconstitutional actions taken pursuant to decisions made by the county prosecutor and the county sheriff because they were the "officials responsible for establishing final policy with respect to the subject matter in question," *id.,* at 483–484.

Our purpose in citing these cases is to emphasize the separate character of the inquiry into the question of municipal responsibility and the question whether a constitutional violation occurred. It was necessary to analyze whether execution of a municipal policy inflicted the injury in these cases because, unlike ordinary tort litigation, the doctrine of *respondeat superior* was inapplicable. The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer. Because petitioner in this case relies so heavily on our reasoning in *Canton* v. *Harris,* 489 U. S. 378 (1989)—and in doing so, seems to assume that the case dealt with the constitutional issue—it is appropriate to comment specifically on that case.

In *Canton* we held that a municipality can, in some circumstances, be held liable under § 1983 "for constitutional violations resulting from its failure to train municipal employees." *Id.,* at 380. Among the claims advanced by the plaintiff in that case was a violation of the "right, under the Due Process Clause of the Fourteenth Amendment, to receive necessary medical attention while in police custody." *Id.,* at 381.[5] Because we assumed, *arguendo,* that the plain-

---

[5] "At the close of the evidence, the District Court submitted the case to the jury, which rejected all of Mrs. Harris' claims except one: her § 1983 claim against the city resulting from its *failure to provide her with medi-*

tiff's constitutional right to receive medical care had been denied, *id.*, at 388–389, n. 8, our opinion addressed only the question whether the constitutional deprivation was attributable to a municipal policy or custom.

We began our analysis by plainly indicating that we were not deciding the constitutional issue.

> "In *Monell* v. *New York City Dept. of Social Services*, 436 U. S. 658 (1978), we decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. *Id.*, at 694–695. 'It is only when the "execution of the government's policy or custom . . . inflicts the injury" that the municipality may be held liable under § 1983.' *Springfield* v. *Kibbe*, 480 U. S. 257, 267 (1987) (O'CONNOR, J., dissenting) (quoting *Monell, supra,* at 694).
>
> "Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.*, at 385.

We did not suggest that all harm-causing municipal policies are actionable under § 1983 or that all such policies are unconstitutional. Moreover, we rejected the city's argument that only unconstitutional policies can create municipal liability under the statute. *Id.*, at 387. Instead, we concluded that if a city employee violates another's constitutional rights, the city may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation. In particular, we held that the inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the

---

*cal treatment while in custody." Canton* v. *Harris,* 489 U. S., at 382 (emphasis added).

failure to train amounted to "deliberate indifference" to the rights of persons with whom the police come into contact. *Id.*, at 388.[6]

Although the term "deliberate indifference" has been used in other contexts to define the threshold for finding a violation of the Eighth Amendment, see *Estelle* v. *Gamble*, 429 U. S. 97, 104 (1976), as we have explained, that term was used in the *Canton* case for the quite different purpose of identifying the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents.[7] In this case, petitioner has used that term to characterize the city's failure to train the employees in its sanitation department. We assume for the purpose of decision that the allegations in the complaint are sufficient to provide a substitute for the doctrine of *respondeat superior* as a basis for imposing liability on the city for the tortious conduct of its agents, but that assumption does not confront the question whether the complaint has alleged a constitutional violation. To that question we now turn.

---

[6] We added:

"Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.

. . . . .

"Consequently, while claims such as respondent's—alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered—are cognizable under § 1983, they can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.*, at 389, 392.

[7] Indeed, we expressly stated: "The 'deliberate indifference' standard we adopt for § 1983 'failure to train' claims does not turn upon the degree of fault (if any) that a plaintiff must show to make out an underlying claim of a constitutional violation." *Id.*, at 388, n. 8.

## III

Petitioner's constitutional claim rests entirely on the Due Process Clause of the Fourteenth Amendment.[8] The most familiar office of that Clause is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State. Petitioner, however, does not advance a procedural due process claim in this case. Instead, she relies on the substantive component of the Clause that protects individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels* v. *Williams*, 474 U. S. 327, 331 (1986).

As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. *Regents of Univ. of Mich.* v. *Ewing*, 474 U. S. 214, 225–226 (1985). The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field. It is important, therefore, to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the city allegedly did to deprive her husband of that right.

A fair reading of petitioner's complaint does not charge the city with a willful violation of Collins' rights. Petitioner does not claim that the city or any of its agents deliberately harmed her husband. In fact, she does not even allege that his supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured. Instead, she makes the more general allegation that the city deprived him of

---

[8] The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law."

life and liberty by failing to provide a reasonably safe work environment.[9] Fairly analyzed, her claim advances two theories: that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace, or that the city's "deliberate indifference" to Collins' safety was arbitrary government action that must "shock the conscience" of federal judges. Cf. *Rochin* v. *California*, 342 U. S. 165, 172 (1952).

Neither the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause. "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" *De-Shaney* v. *Winnebago County Dept. of Social Services*, 489 U. S., at 196 (quoting *Davidson* v. *Cannon*, 474 U. S. 344, 348 (1986)). As we recognized in *DeShaney:*

> "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such

---

[9] Petitioner alleges that her husband had "a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the City of Harker Heights' custom and policy of deliberate indifference toward the safety of its employees." App. 7. The city's policy and custom of not training its employees and not warning them of the danger allegedly caused Collins' death and thus deprived him of those rights. *Id.*, at 8.

an expansive reading of the constitutional text." 489 U. S., at 195.[10]

Petitioner's submission that the city violated a federal constitutional obligation to provide its employees with certain minimal levels of safety and security is unprecedented. It is quite different from the constitutional claim advanced by plaintiffs in several of our prior cases who argued that the State owes a duty to take care of those who have already been deprived of their liberty. We have held, for example, that apart from the protection against cruel and unusual punishment provided by the Eighth Amendment, cf. *Hutto* v. *Finney*, 437 U. S. 678 (1978), the Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for pretrial detainees, see *Bell* v. *Wolfish*, 441 U. S. 520, 535, n. 16, 545 (1979), for persons in mental institutions, *Youngberg* v. *Romeo*, 457 U. S. 307, 315–316 (1982), for convicted felons, *Turner* v. *Safley*, 482 U. S. 78, 94–99 (1987), and for persons under arrest, see *Revere* v. *Massachusetts General Hospital*, 463 U. S. 239, 244–245 (1983). The "process" that the Constitution guarantees in

---

[10] "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property. *E. g., Davidson* v. *New Orleans*, 96 U. S. 97 (1878) (assessment of real estate); *Rochin* v. *California*, 342 U. S. 165 (1952) (stomach pumping); *Bell* v. *Burson*, 402 U. S. 535 (1971) (suspension of driver's license); *Ingraham* v. *Wright*, 430 U. S. 651 (1977) (paddling student); *Hudson* v. *Palmer*, 468 U. S. 517 (1984) (intentional destruction of inmate's property). No decision of this Court before *Parratt* [v. *Taylor*, 451 U. S. 527 (1981),] supported the view that negligent conduct by a state official, even though causing injury, constitutes a deprivation under the Due Process Clause. This history reflects the traditional and common-sense notion that the Due Process Clause, like its forebear in the Magna Carta, see Corwin, The Doctrine of Due Process of Law Before the Civil War, 24 Harv. L. Rev. 366, 368 (1911), was 'intended to secure the individual from the arbitrary exercise of the powers of government,' *Hurtado* v. *California*, 110 U. S. 516, 527 (1884)." *Daniels* v. *Williams*, 474 U. S. 327, 331 (1986).

connection with any deprivation of liberty thus includes a continuing obligation to satisfy certain minimal custodial standards. See *DeShaney*, 489 U. S., at 200. Petitioner cannot maintain, however, that the city deprived Collins of his liberty when it made, and he voluntarily accepted, an offer of employment.

We also are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense. Petitioner's claim is analogous to a fairly typical state-law tort claim: The city breached its duty of care to her husband by failing to provide a safe work environment. Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," *Daniels* v. *Williams*, 474 U. S., at 332, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law, see, *e. g., id.*, at 332–333; *Baker* v. *McCollan*, 443 U. S. 137, 146 (1979); *Paul* v. *Davis*, 424 U. S. 693, 701 (1976). The reasoning in those cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship. See, *e. g., Bishop* v. *Wood*, 426 U. S. 341, 350 (1976); *Board of Regents of State Colleges* v. *Roth*, 408 U. S. 564, 577–578 (1972).

Our refusal to characterize the city's alleged omission in this case as arbitrary in a constitutional sense rests on the presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces. Cf. *Walker* v. *Rowe*, 791 F. 2d 507, 510 (CA7 1986). Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular as-

pects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country. The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop* v. *Wood,* 426 U. S., at 350. Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm.

Finally, we reject petitioner's suggestion that the Texas Hazard Communication Act[11] supports her substantive due process claim. We assume that the Act imposed a duty on the city to warn its sanitation employees about the dangers of noxious gases in the sewers and to provide safety training and protective equipment to minimize those dangers.[12] We also assume, as petitioner argues, that the Act created an entitlement that qualifies as a "liberty interest" protected by the Due Process Clause. But even with these assumptions, petitioner's claim must fail for she has not alleged that the deprivation of this liberty interest was arbitrary in the constitutional sense. Cf. *Harrah Independent School Dist.* v.

---

[11] Tex. Rev. Civ. Stat. Ann., Art. 5182b (Vernon 1987).

[12] Section 10(a) of the Act states, for example:

"Every employer shall provide, at least annually, an education and training program for employees using or handling hazardous chemicals. . . . Additional instruction shall be provided when the potential for exposure to hazardous chemicals is altered or when new and significant information is received by the employer concerning the hazards of a chemical. New or newly assigned employees shall be provided training before working with or in a work area containing hazardous chemicals."

And § 15(a)states:

"Employees who may be exposed to hazardous chemicals shall be informed of the exposure and shall have access to the workplace chemical list and [material safety data sheets] for the hazardous chemicals. . . . In addition, employees shall receive training on the hazards of the chemicals and on measures they can take to protect themselves from those hazards and shall be provided with appropriate personal protective equipment. These rights are guaranteed on the effective date of this Act."

*Martin,* 440 U. S. 194, 198–199 (1979). The reasons why the city's alleged failure to train and warn did not constitute a constitutionally arbitrary deprivation of Collins' life, see *supra,* at 128–129, apply *a fortiori* to the less significant liberty interest created by the Texas statute.

In sum, we conclude that the Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the workplace and the city's alleged failure to train or to warn its sanitation department employees was not arbitrary in a constitutional sense. The judgment of the Court of Appeals is therefore affirmed.

*It is so ordered.*