**Leslie PROSSER and Danielle Prosser, Plaintiffs,**

v.

**Douglas FRANCOEUR, Clifton Edwards, Lenawee County Sheriff's Department, and Certain Unidentified and Unnamed Officers of the Omni Drug Enforcement Unit, Defendants.**

No. 99–CV–72009.

United States District Court, E.D. Michigan, Southern Division.

Jan. 10, 2000.

Thomas L. Thompson, James D. Hayne, Hillsdale, MI, for plaintiffs.

Mark E. Donnelly, Assistant Attorney General, State of Michigan, Tort Defense Division, Lansing, MI, Ian James Reach, Ann Arbor, MI, for defendants.

## *OPINION*

DUGGAN, District Judge.

The instant cause of action stems from a high speed police pursuit, during which plaintiff Leslie Prosser, a passenger in a vehicle operated by Shane Wesley Austin, was shot in the head by defendant Douglas Francoeur, a deputy with the Lenawee County Sheriff's Department. On April 21, 1999, plaintiff Leslie Prosser filed a five-count complaint against defendants Douglas Francoeur, Clifton Edwards, the Lenawee County Sheriff's Department, and certain unidentified and unnamed officers of the OMNI drug enforcement unit, on behalf of herself and her minor child, Danielle Prosser,[1] alleging negligence (Count I), intentional infliction of emotional distress (Count II), assault and battery (Count III), negligent training and supervision (Count IV), and violation of plaintiff Leslie Prosser's fundamental right to be free from infliction of unnecessary pain in violation of 42 U.S.C. § 1983 (Count V).

Defendant Francoeur has filed a motion for summary judgment contending that he is entitled to qualified immunity.[2] The Court, having heard oral argument and having reviewed the briefs filed in support of, and in opposition to, defendant Francoeur's motion for summary judgment, is satisfied that the only federal claim asserted by plaintiffs, Count V, brought pursuant to § 1983, must be dismissed.

---

1. Danielle Prosser, plaintiff Leslie Prosser's minor child, was present in the vehicle during the pursuit and witnessed the shooting. The complaint alleges claims of severe and permanent mental distress on behalf of plaintiff Danielle Prosser.

2. Defendant Clifton Edwards, as well as defendant Lenawee County Sheriff's Department, have already been voluntarily dismissed from the case. The dismissal of defendant Lenawee County Sheriff's Department has rendered Count IV of plaintiffs' complaint, premised upon negligent training and supervision, moot.

## Background

In their complaint, plaintiffs allege that they were passengers in a motor vehicle driven by Shane Wesley Austin, which defendant Francoeur, an employee of the Lenawee County Sheriff's Department, attempted to stop in order to confront Austin "regarding his suspected involvement in illegal activity." (Compl. at ¶¶ 11–12). According to plaintiffs' complaint, defendant "knew or reasonably should have known," that plaintiffs were passengers in Austin's vehicle and that "there were one or more minor children riding as passengers." (Compl. at ¶ 53a).

Plaintiffs further allege that defendant Francoeur attempted to stop Austin's vehicle by placing his vehicle in the path of Austin's vehicle and that Austin attempted to flee by driving around defendant Francoeur's vehicle and proceeding away from the scene, at which point, defendant Francoeur "fired several shots from his pistol toward Mr. Austin's vehicle." (Compl. at ¶ 16). Defendant Francoeur "thereafter instigated and participated in a high speed pursuit of Mr. Austin's vehicle," during the course of which defendant Francoeur again attempted to intercept Austin's vehicle by blocking the road with his police vehicle "in an attempt to force Mr. Austin to stop his vehicle." (Compl. at ¶¶ 17–18). Austin, however, "did not stop his vehicle, but instead drove into a field, traveling around [d]efendant Francoeur's vehicle." (*Id.* at ¶ 18).

"[A]fter Mr. Austin drove around [d]efendant Francoeur's vehicle and continued driving away from [d]efendant Francoeur, [d]efendant Francoeur again fired several shots from his pistol at Mr. Austin's vehicle ... despite his specific knowledge that [p]laintiffs were riding as passengers in Mr. Austin's vehicle." (Compl. at ¶ 19).

The complaint further alleges that one of the shots fired by defendant Francoeur struck plaintiff Leslie Prosser in the head. (Compl. at ¶ 20).

## Discussion

 Plaintiffs have asserted a federal claim against defendant Francoeur under 42 U.S.C. § 1983, which "implicates the substantive components of the Fourteenth Amendment's Due Process Clause."[3] (Pls.' Br. at 17.) The first step in a qualified immunity analysis is to determine whether there has been a constitutional violation. *Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir.1996). Because this Court is satisfied that defendant Francoeur's actions did not violate the Fourteenth Amendment, plaintiffs' § 1983 claim, the only federal claim asserted by plaintiffs, must be dismissed.

 Although plaintiffs contend that this case should not be analyzed in the context of a high speed police pursuit, this Court disagrees. In this Court's opinion, plaintiff Leslie Prosser's injuries resulted from, and were the consequences of, a high speed police pursuit. It is factually true that at the time defendant Francoeur fired his weapon causing injury to plaintiff Leslie Prosser, he was not in a moving vehicle "pursuing" the vehicle operated by Austin. Nevertheless, defendant Francoeur was in "pursuit" of the fleeing vehicle as he was attempting to stop it; just as a police officer "pursuing" a fleeing vehicle by chasing it in a moving vehicle is attempting to stop the fleeing vehicle. Furthermore, plaintiffs' complaint specifically alleges that defendant Francoeur "participated in a high-speed pursuit of Mr. Austin's vehicle." (Compl. at ¶ 17).

---

**3.** In their complaint, plaintiffs also assert that defendant Francoeur's actions violated the Fifth Amendment. (Compl. at ¶ 50). However, the Fifth Amendment to the United States Constitution applies only to actions of the federal government. *Riley v. Camp,* 130 F.3d 958, 972 n. 19 (11th Cir.1997) ("The Fifth Amendment obviously does not apply here— the acts complained of were committed by state rather than federal officials."); *see also Newsom v. Vanderbilt University,* 653 F.2d 1100, 1113 (6th Cir.1981). Therefore, this claim must fail.

Because plaintiffs' § 1983 claim involves a high speed police pursuit, the principles enunciated by the United States Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), control. In *County of Sacramento,* the Supreme Court stated that "the substantive component of the Due Process clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.* 118 S.Ct. at 1717 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992)). The Supreme Court also "made it clear that the Due Process guaranty does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* According to the Supreme Court, only "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* 118 S.Ct. at 1718.

However, because police involved in high speed pursuits, like prison officials facing a riot, are called upon to exercise fast action and have little time for contemplation or careful planning, the Supreme Court recognized that even deliberate indifference "may well not be enough for liability in the different circumstances of a [high speed police pursuit case]." *Id.* at 1719. Accordingly, the Supreme Court held "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment redressible by an action under § 1983." *Id.* at 1720. Under such circumstances, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* at 1711–12.

Viewing the evidence in a light most favorable to plaintiff, this Court is satisfied that no reasonable jury could conclude that defendant Francoeur's actions were arbitrary or conscience-shocking under the standard announced in *County of Sacramento.* Defendant Francoeur faced a situation often faced by police officers, which required him to act immediately and without the opportunity for careful planning. The record in this case, including deposition testimony and other documentation supplied by the parties, reveals that the vehicle in which plaintiffs were occupants was attempting to flee the police at a high rate of speed, that defendant Francoeur had heard over his police radio that shots had been fired from the vehicle, and that defendant Francoeur barely escaped injury by diving back into his car when the vehicle carrying plaintiffs deliberately struck defendant Francoeur's vehicle. The record also reveals that defendant Francoeur suspected that Austin, who was under investigation for manufacturing and distributing methamphetamine, "was armed with a stolen hand gun ... and had made it known that he would resist capture." (Francoeur Aff. at ¶ 3).

Plaintiffs have provided no evidence that would support a reasonable conclusion that defendant Francoeur intended to injure plaintiff Leslie Prosser, or that, in drawing his weapon and firing at the fleeing vehicle, defendant Francoeur was acting with "a purpose to cause harm unrelated to the legitimate object of arrest."[4] Although plaintiff Leslie Prosser asserts that defendant Francoeur "looked right at [her]," aimed, and shot, defendant Francoeur asserts that he did not see plaintiff Leslie Prosser in the vehicle. (Prosser Dep. at 49, Francoeur Aff. at ¶ 8). Furthermore, this Court can think of no reason why a police officer involved in a high speed police pursuit would deliberately intend to injure a *passenger.* Moreover, plaintiff has presented no evidence refuting defendant Francoeur's contention that he "fired several shots at the tires as a result of the

---

4. There is, in fact, no allegation in plaintiffs' § 1983 claim (Count V) that defendant Fran-

coeur fired his weapon with an intent to injure anyone.

major safety threat the van continued to pose." (Francoeur Aff. at ¶ 17).

Accordingly, because the Court finds that there was no federal constitutional violation, defendant's motion for summary judgment on the basis of qualified immunity shall be granted.

### *State Law Claims*

■ Having dismissed plaintiffs' only federal claim, this Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims.[5] In regard to actions including supplemental state law claims originally filed in federal court, the Sixth Circuit has repeatedly indicated that once the federal claims have been dismissed prior to trial, it is generally proper for the district court to dismiss the supplemental state law claims without prejudice so they may be pursued in an appropriate state forum. *See Whittington v. Milby,* 928 F.2d 188 (6th Cir.1991); *Heussner v. National Gypsum Co.,* 887 F.2d 672 (6th Cir.1989). Therefore, the Court shall dismiss the state law claims without prejudice.

### *Conclusion*

For the reasons stated above, defendant's motion for summary judgment shall be granted on grounds of qualified immunity. Furthermore, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. Therefore, plaintiffs' state law claims shall be dismissed without prejudice.

A Judgment consistent with this Opinion shall issue forthwith.

---

**5.** Plaintiffs' complaint asserts that "[t]his Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights and elective franchise), and 28 U.S.C. § 1367 (supplemental jurisdiction)." (Pls.' Compl. at ¶ 9).