NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1048
_____

DEAN VARGO, an adult incompetent by his parent
and natural guardian PATRICIA A. VARGO,

Appellant

v.

PLUM BOROUGH; PLUM BOROUGH POLICE DEPARTMENT; ROBERT PAYNE,
individually and in his capacity as Chief of Police; ERIC SCHLARP, individually and in
his capacity as a police officer of Plum Borough; DARRYL D. GRANATA, JR.,
individually and in his capacity as a police officer of Plum Borough; DONALD LEE
TEMPLE, JR., individually and in his capacity as a police officer of Plum Borough;
LISA A. LINN, individually and in her capacity as dispatcher for the Plum Borough
Police Department and for Plum Borough

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-06-cv-01574)
District Judge:  The Honorable Joy Flowers Conti

_____

Submitted Under Third Circuit LAR 34.1(a)
April 12, 2010

Before: SLOVITER and NYGAARD, Circuit Judges.
and RESTANI,* Judge.


(Filed : April 19, 2010)

_____

*Honorable Jane A. Restani, Chief Judge for the United States Court of
International Trade, sitting by designation.

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Dean Vargo was arrested by Plum Borough police for failure to appear for a trial. He was taken to the Plum Borough Police Station and placed in a holding cell. No other prisoners were in the cell with him. After he was locked into the cell, the police officers left the station to respond to another call, leaving the police dispatcher alone in the station. The dispatcher, able to monitor Vargo in the holding cell on a closed-circuit television, noticed Vargo attempting to commit suicide by hanging himself with his shirt, which he had fastened to the cell bars. Station policy, however, prohibited the dispatcher from entering cells occupied by prisoners, even in cases of emergency. Thus, the dispatcher could not attempt a rescue, but did contact police officers. Vargo did not die, but suffered severe brain damage as a result of his suicide attempt.

Vargo, by his parent and guardian, sued, asserting claims under 42 U.S.C. § 1983 and Pennsylvania tort law. The District Court first dismissed the state law claims, finding immunity for the Borough and its police officers. Following discovery, the District Court granted summary judgment to the Borough and its officers on Vargo's remaining § 1983 claim. We will affirm essentially for the reasons set forth in the Magistrate Judge's Report and Recommendation as adopted by the District Court. We will, however, briefly outline our _ratio decidendi_ on some of the issues raised by Vargo on appeal.

2

We begin with the District Court's dismissal of Vargo's state law claims. Here, the District Court properly determined that the Pennsylvania Political Subdivision Tort Claims Act gave Plum Borough and its police officers immunity from suit. The Act provides that "no local agency shall be liable for any act of the local agency or employees thereof or any other person." 42 Pa. Cons. Stat. § 8541. Vargo relies on a dissenting opinion in *Pennsylvania State Police v. Klimek*, 839 A.2d 1173 (Pa. Cmwlth. Ct. 2003). This, however, does not rescue his claim. The Magistrate Judge correctly relied on the majority opinion in *Klimek* and did not err by holding the Borough immune from suit under Pennsylvania law.

Vargo additionally argues that the allegations contained in Count III of his complaint allege willful misconduct, not negligence. He argues that because the Borough police officers knew that he was in an agitated state and under the influence of narcotics when arrested, he was vulnerable to suicide. This, however, does not amount to willful misconduct. As we have held, willful misconduct under Pennsylvania law is a "demanding level of fault," and we have found it synonymous with an allegation of an "intentional tort." *See Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 294 (Pa. 1994); *Bright v. Westmoreland County*, 443 F.3d 276, 287 (3d Cir. 2006)). Vargo does not allege any intent by the Borough or Borough police officers to cause harm nor does his complaint allege that the Appellees

were "substantially certain" that Vargo would attempt suicide. *Id.* Without these specific allegations, there can be no finding of willful misconduct and it was not error for the District Court to dismiss Vargo's complaint.

## II.

Because Vargo was a pretrial detainee, we analyze his § 1983 claims under the Fourteenth Amendment's substantive due process protection against arbitrary abuse of government power, his Eighth Amendment protection from cruel and unusual punishment having not yet attached. *See Colburn v. Upper Darby Twp.* (*Colburn I*), 838 F.2d 663, 668 (3d Cir. 1988).

Municipalities, which are considered "persons" under § 1983, may be liable for constitutional torts if two prerequisites are met: (1) the plaintiff's harm was caused by a constitutional deprivation; and (2) the municipal entity is responsible for that violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). A government entity may not be held vicariously liable for the constitutional violations of its agents under a theory of *respondeat superior*. *Id.* at 122. Instead, municipal entities are only liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978).

In *Colburn v. Upper Darby Twp.* (*Colburn II*), we explained that a plaintiff in a pretrial detainee prison suicide case must establish each of the following three elements to establish a violation of due process: (1) the detainee had a "particular vulnerability to suicide;" (2) the custodial officer or officers should have known of that vulnerability; and (3) those officers "acted with reckless indifference" to the detainee's particular vulnerability. 946 F.2d 1017, 1024 (3d Cir. 1991). Under the first prong, the plaintiff must show that there was a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." *Id.* The second prong reflects the requirement that "[t]he strong likelihood of suicide must be so obvious that a lay person would easily recognize the necessity for preventative action; the risk of self-inflicted injury must not only be great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." *Id.* at 1025. Finally, the third prong recognizes that there must be a link between the prison official's knowledge and his disregard of the prisoner's particular risk. Although we have not developed the exact contours of the third prong, we have suggested that it is similar to the "deliberate indifference" standard applied to a claim brought under the Eighth Amendment, which requires the plaintiff to prove that the prison official "know[s] of and disregard[s] an excessive risk to inmate health and safety." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001)).

5

Based upon the evidence of record, the District Court determined that Vargo could not prove that he had a particular vulnerability to suicide. We agree with that conclusion. No witness observed or claimed that Vargo was acting abnormally or that he gave any indication that he was going to inflict harm upon himself. Additionally, testimony indicated that if Vargo had exhibited any behavior or made any articulable threat to his personal safety, he would not have been left alone in the cell. Finally, the record clearly establishes that Vargo had no history of suicide attempts and that his family was unaware if Vargo was afflicted with any mental health problems.

We find persuasive the District Court's conclusion that Vargo did not present any evidence that an additional screening method would have aided him, especially where those individuals who knew Vargo have testified that he gave no indication that he wished to harm himself. For example, the record relates that people who knew Vargo were "shocked" by his suicide attempt. *See Colburn II*, 946 F.2d at 1026 (commenting that similar evidence seeking to establish that heavy intoxication is a "serious red flag" of a predisposition to commit a jailhouse suicide was insufficient to establish a particular vulnerability to suicide). We have instructed that the *Colburn* test is detainee-specific, and here, Vargo simply failed to submit sufficient evidence to create an issue of fact that there was a "strong likelihood" that he would commit suicide.

III.

6

As to the remaining issues presented on appeal, we will affirm essentially for the reasons set forth in the Magistrate Judge's Report and Recommendation, as adopted by the District Court. We conclude that the District Court did not err by adopting the Report and Recommendation of the Magistrate Judge and by granting summary judgment in favor of the Borough and its police officers. Accordingly, we will affirm the judgment of the District Court.