NOONAN, Circuit Judge,
dissenting:
Today, the majority holds that the state-created danger doctrine — a theory of constitutional harm whose contours have been “clearly established” by at least nine published opinions of this court over the course of two decades — is no longer sufficiently “clear” in light of a single case which addresses an unrelated legal theory. I respectfully dissent.
I.
In this circuit, the state-created danger doctrine begins with Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989). In Wood, a police officer arrested an intoxicated driver, impounded the vehicle, and refused the passenger’s request for a ride, léaving her stranded late at night in a high crime area. Id. at 586. On her walk home, she accepted á ride from a stranger, who ultimately took her to a secluded area and raped her. Id. On these facts, this court held that the plaintiff raised a triable issue as to whether the officer’s conduct “affirmatively placed the plaintiff in a position of danger.” Id. at 589-90. The court reasoned that while the officer did not assault Wood himself, he acted “in callous disregard for [her] safety” by exposing her to a known and “inherent danger.” Id. Wood and the cases that follow have emphasized that in order for liability to attach under the state-created danger doctrine, the state actor must knowingly create “an actual, particularized danger.” Kennedy v. City of Ridgefield, 439 F.3d 1055, 1063 (9th Cir. 2006). However, the facts of these cases make clear that the state’s actions need not be the only but-for cause of the ultimate harm, and that its foreseeability need not be certain to be actionable.
Indeed, in Wood, it was far from certain that the plaintiff would be accosted on her *1133 way home; furthermore, her decision to accept a ride from a stranger in a high-crime area was an intervening act that was an independent cause of the harm she sustained. Yet this court had no trouble concluding that the causal nexus between the officer’s conduct and the harm endured was sufficiently close to warrant holding the state liable, characterizing it as “a matter of common sense.” Wood, 879 F.2d at 590.
In Kennedy, an officer was called upon to investigate an allegation made by Jay and Kimberly Kennedy that their thirteen year-old neighbor, Michael Burns, had molested their daughter. 439 F.3d 1055, 1057 (9th Cir.2006). Kimberly informed the officer that she believed Burns was violent and lived in an unstable household. Id. at 1057-58. In response, the officer assured her that she would be given notice prior to any police contact with Burns. Id. at 1058. A few weeks later, the officer drove to Burns’ house and informed him of the molestation allegations made by the Ken-nedys, and immediately after, drove to the Kennedy house to update them on the situation. When Kimberly expressed her displeasure with the officer for failing to provide her with advance notice of his contact with Burns as he had promised, the officer assured her that the police would patrol the area and “keep an eye” on Burns. Id. The police never conducted the promised patrol. The next morning, Burns broke into the Kennedys’ home and shot them in their sleep, killing Jay and severely wounding Kimberly. Id. at 1057.
While Burns “had a predilection for violence,” id. at 1064, it was by no means certainly foreseeable that even a violent thirteen year-old could commit such a heinous act. However, in affirming the denial of qualified immunity to the officer, this court clarified that “for a danger to exist, the exact injury inflicted by a third party [need not] have been foreseeable”; rather, liability attaches where the state actor places a plaintiff “in a situation more dangerous than the one she already faced.” Id. at 1064 n.5; see also Munger v. City of Glasgow Police Dep’t, 227 F.3d 1082, 1086 (9th Cir.2000).
In the case at bar, the facts as alleged state that defendants had full knowledge of the mold problem at Shadow Lane in 2003 when, over Pauluk’s objections, it transferred him there. Pauluk was therefore willfully exposed to a mold spore infestation, and all its attendant health risks, with every breath he took. It would be a cruel irony to hold that a harm that strikes at the very heart of a state agency’s core competency is not sufficiently “particularized” or “foreseeable” to it for purposes of the state-created danger doctrine. Indeed, the harms suffered in Wood and Kennedy were arguably more attenuated than what Pauluk faced. In those cases, the officers’ conduct only created an increased probability of harm to the plaintiffs; conversely, it was certain that Pauluk would suffer at least some harm due to the inevitable inhalation of mold.
No basis exists to distinguish this case from Wood, Kennedy, or any other published opinion of this court upholding the applicability of the state-created danger doctrine. I would affirm the district court’s denial of summary judgment. I therefore concur with the majority’s conclusion that, viewing the facts in the light most favorable to plaintiffs, they have shown a violation of the Fourteenth Amendment under the state created danger doctrine.
II.
In Collins v. City of Harker Heights, Tex., the plaintiffs deceased spouse, an employee of a municipal sanitation department, died from asphyxiating on noxious fumes after entering a manhole to fix a sewer line. 503 U.S. 115, 117, 112 S.Ct. *1134 1061, 117 L.Ed.2d 261 (1992). Collins brought suit under 42 U.S.C. § 1983, alleging that the City violated the substantive Due Process Clause of the Fourteenth Amendment by failing to maintain a minimal level of workplace safety. The Supreme Court rejected this argument, holding that the Fourteenth Amendment does not encompass a generalized duty to “provide [government] employees with minimal levels of safety and security in the workplace.” Id. at 126, 112 S.Ct. 1061.
While Collins and Pauluk both died from •inhaling poisonous air in the workplace, the similarity between their cases ends there. Indeed, Collins does not ever discuss the state-created danger doctrine— the theory upon which Pauluk’s entire case hinges. To hold that Collins defines the contours of a doctrine that it does not even mention would expand its holding far beyond what the Court could have reasonably intended.
The Collins Court emphasized that the plaintiff “does not claim that the city or any of its agents deliberately harmed her husband. In fact, she does not even allege that his supervisor instructed him to go into the sewer when the supervisor knew or should have- known that there was a significant risk that he would be injured.” Id. at 125, 112 S.Ct. 1061. Pauluk’s case therefore presents the precise facts that the Collins Court deemed were inapplicable to its analysis and holding. Accordingly, Collins does not counsel against affirming the district court here. Indeed, the majority appears to concede that Collins is distinguishable, but concludes that even assuming Pauluk has stated a constitutional violation, the factual circumstances of this case are simply too similar to the facts of Collins for the defendants to have been “ ‘on notice’ that their conduct was unlawful under clearly established law.” Majority Op. at 1126.
The law governing the state-created danger doctrine is “clearly established” by the controlling precedent discussed above such that “any reasonable official in [defendants’] shoes would have understood that [they were] violating it.” City & Cty. of S.F. v. Sheehan, — U.S. ——, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015) (citations omitted). Indeed, in light of these cases, the constitutional question has been “placed .. .beyond debate.” Id. A case which presents some factual similarities but lacks any legal nexus to the state-created danger doctrine cannot revive that debate, nor can it serve to convolute what this court has defined with pellucid clarity. Collins does not control here. Accordingly, I dissent.