NOT RECOMMENDED FOR PUBLICATION
File Name:  18a0390n.06
No. 17-5543

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SUSAN SUMMER DURHAM, As Widow and Administratrix of the Estate of Christopher Durham and on Behalf of the Wrongful Death Beneficiaries of CHRISTOPHER DURHAM, deceased, | ) ) ) ) ) | **FILED**<br>Aug 03, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| ESTATE OF GUS LOSLEBEN, Deceased, By and Through the Estate's Administrator, Lloyd Tatum, Esquire; HARDIN COUNTY FIRE DEPARTMENT; HARDIN COUNTY, TENNESSEE; JOHN DOES 1–10, | ) ) ) ) ) ) | OPINION |
| Defendants-Appellees. | ) | |

Before:  MOORE, THAPAR, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.**  This appeal arises from a tragic collision that took the lives of a logger and a fireman on a rural Tennessee road.  Plaintiff Susan Durham ("Plaintiff") alleges that her decedent Christopher Durham ("Durham") was driving northbound on Holland Creek Road in Hardin County, Tennessee, when fireman Gus Losleben, driving his fire truck southbound, entered Durham's lane and crashed into him, killing both men.  Because there were no witnesses and because both men died at the scene, scant evidence is available to shed light on the moments leading up to the accident.  Plaintiff's complaint thus fails to state facts that would plausibly implicate Losleben as having engaged in the sort of egregious, conscience-shocking behavior that is required for Plaintiff to state a claim against Losleben or Hardin County for federal

constitutional liability. Plaintiff may have a remedy for her loss in the Tennessee state courts, but she cannot state a civil-rights claim under 42 U.S.C. § 1983. We therefore affirm the district court's dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).[1]

**I**

Plaintiff alleges that Losleben was driving "at an excessive rate of speed prior to the collision" even though he "was not responding to any fire service emergency at the time." According to Plaintiff's complaint, "Losleben crossed into Durham's lane while driving the fire truck at an excessive rate of speed," "Losleben knew, or should have known, that his conduct in driving the fire truck at an excessive rate of speed created a significant risk and likelihood of serious injury and death to foreseeable motorists," and "Losleben's decision to operate the fire truck at an excessive rate of speed on narrow Holland Creek Road was reckless and deliberately indifferent to the safety of other motorists . . . including Durham." Plaintiff describes Losleben's driving as exhibiting "reckless disregard," "deliberate indifference," and "conduct which shocks the conscience." But Plaintiff's complaint fails to state facts sufficient to prove that Losleben did more than speed and enter Durham's lane. The district court thus held that, under controlling Supreme Court precedent, Plaintiff's allegations do not rise to the level of a federal constitutional violation. *Durham v. Estate of Losleben*, No. 16-1042-STA-egb, 2017 WL 1437209, at \*7 (W.D. Tenn. Apr. 21, 2017). Plaintiff timely appealed, and we review de novo, accepting as true all and only the allegations in Plaintiff's complaint and construing Plaintiff's complaint in her favor. *See Cooey v. Strickland*, 479 F.3d 412, 415–16 (6th Cir. 2007).

---

[1] Because our resolution of the 12(b)(6) issue suffices to affirm the district court's dismissal, we decline to review the district court's alternative holding as to Hardin County that Plaintiff's claim was untimely. And because no party has asked us to, we do not inquire into the adequacy of any remedy available to Plaintiff in the state courts.

## II

Section 1983 offers a federal remedy when a state actor deprives a person of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Sometimes, plaintiffs use § 1983 to seek a remedy for a violation of a "specific" constitutional provision, such as a claim for malicious prosecution (a Fourth Amendment claim, *see King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017)) or a claim for deliberate indifference to a prisoner's medical needs (an Eighth Amendment claim, *see Bays v. Montmorency Cty.*, 874 F.3d 264, 268 (6th Cir. 2017)). And the Supreme Court tells us that when "a constitutional claim is covered by a *specific* constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (emphasis added) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). But when no such "specific" provision is in play, then a § 1983 claim for deprivation of life is cognizable as a Fourteenth Amendment substantive-due-process claim. *Id.* at 842–43.

Under *Lewis*, a state actor's deprivation of another's life is a violation of due process when it is "arbitrary." *Id.* at 845. But "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992) (no substantive-due-process claim lay against city where sanitation worker died of asphyxia after entering manhole to unstop sewer line)). Accordingly, only "conduct 'that shocks the conscience' and violates the 'decencies of civilized conduct'" is actionable as a substantive-due-process violation under § 1983. *Ibid.* (quoting *Rochin v. California*, 342 U.S. 165, 209–10 (1952)). The Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability *whenever* someone cloaked with state authority causes harm." *Id.* at 848 (emphasis added); *see also ibid.* ("[T]he Fourteenth Amendment is not a

'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976))). Thus, the Court has "categorically" rejected mere negligence as violative of constitutional due process. *Id.* at 849. On the other hand, "conduct intended to injure" is the "most likely to rise to the conscience-shocking level" and thus count as egregious for the purpose of stating a substantive-due-process claim. *Ibid.* *Lewis* thus sets forth a standard—"the most egregious," conscience-shocking behavior—and provides outside parameters (mere negligence is insufficient, while purpose to injure is more likely to be sufficient but not always necessary) for the imposition of liability. *Id.* at 846.

When it comes to firemen engaged in tortious driving while not responding to an emergency, however, it is unsettled exactly where the line falls between merely tortious conduct and constitutionally deficient conduct. What about gross negligence? Recklessness? Willful blindness? Or conduct where a state actor knows (or has substantial certainty) that it will cause injury but does not intend such injury?

The cases provide some guidance. In *Lewis* itself, the Supreme Court held that no substantive-due-process claim lay where a boy was killed during a high-speed police chase: even an allegation of deliberate indifference to the boy's survival was insufficient to state a claim, the Court held, because an officer engaged in such a chase in which decisions were made instantaneously or instinctively could be held liable *only* if he had "an improper or malicious motive." *Id.* at 854–55. For our part, we have held that whether conduct falling in the middle ground between negligence and intent to injure is constitutionally deficient depends on such factors as "(1) the voluntariness of the relationship between the government and the plaintiff, especially whether the plaintiff was involuntarily in government custody or was voluntarily a government employee; (2) whether the executive actor was required to act in haste or had time for deliberation;

and (3) whether the government actor was pursuing a legitimate governmental purpose." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 536 (6th Cir. 2008) (affirming dismissal of substantive-due-process claim by teacher's aide against school board for dangerous working conditions arising from assault of aide by autistic student). Essentially, the more voluntary the plaintiff-government relationship, or the less time the state actor has to deliberate, or the greater the extent to which the state actor is pursuing a legitimate end, the less arbitrary we should deem a bodily injury or death caused by the state actor.

### III

Plaintiff relies on the *Hunt* factors by arguing that Durham had no voluntary relationship with Defendants, that Losleben had sufficient time to deliberate as to whether to speed (because Losleben was not under any present obligation to act in haste), and that Losleben was not pursuing any legitimate interest that would compete with driving safely. Appellant's Br. 27–28. But, other than to repeat the refrain from Plaintiff's complaint that Losleben was driving "at an excessive rate of speed," Plaintiff states no facts that would support a conclusion that Losleben's conduct was any more than grossly negligent, even granting Plaintiff all reasonable inferences. The *Hunt* factors are meant to help us, in cases of uncertainty, to decide whether conduct is actionable under § 1983. But given Plaintiff's allegations, there is no uncertainty that Plaintiff has failed to state anything more than negligence or, at most, gross negligence on the part of Losleben. At worst, given the facts stated in the complaint, Losleben was speeding down a narrow road for no reason and crossed into Durham's lane. The result of that allegedly tortious conduct was a tragic loss of life. But roadway fatalities caused by speeding and failure to stay within one's lane are, sadly, regular occurrences. Without more, Plaintiff's allegations simply cannot rise to the level of arbitrary, conscience-shocking, egregious conduct that a substantive-due-process claim requires.

Thus, we need not craft a particularized rule of liability for firemen who cause fatal accidents when not responding to emergency service calls, for the Court's holding in *Lewis* suffices to decide this case and to foreclose Plaintiff's pursuit of a federal remedy.

At oral argument, Plaintiff relied chiefly on *Servin v. Anderson*, No. 3:11-cv-539, 2012 WL 171330 (D. Conn. Jan. 20, 2012), and *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015), as cases in which a federal court allowed an ostensibly analogous claim to go forward. But in *Servin*, the defendant police officers were driving as fast as *ninety-five* miles per hour in a forty-mile-per-hour zone while heading back to the station when one of the officers caused a fatal accident en route. *Servin*, 2012 WL 171330, at *2. Here, Plaintiff has alleged only that Losleben was driving at an "excessive" speed; one might reasonably infer that this means a speed in excess of the speed limit, but we cannot infer that this means a conscience-shocking speed. And indeed, even the *Servin* court thought it was "unquestionably a closer call," *id.* at *5, whether the officers' conduct was conscience-shocking there; the court denied the defendants' motion to dismiss only after granting the plaintiff the inference that it was "possible that, for example, the police officers were only driving at high speeds because they knew they were clothed with the authority of state law," *id.* at *3.

In *Browder*, the Tenth Circuit affirmed the denial of a motion to dismiss (including the denial of qualified immunity) where an off-duty police officer sped through 8.8 miles of city streets before running through a red light and killing the plaintiff's decedent. (The officer was also charged criminally with reckless vehicular homicide.) *Browder*, 787 F.3d at 1077. The court held that because a jury could reasonably infer "a conscious contempt of the lives of others and thus a form of reckless indifference to a fundamental right," the lawsuit should move forward. *Id.* at 1081. Indeed, the officer there knew the light was red, had the occasion to deliberate, and yet "pressed

the gas pedal, ignored the light," and caused the fatal crash. *Id.* at 1077. This was joyriding, plain and simple, and the Tenth Circuit compared the officer's alleged conduct to a medieval king's exercise of the "power of destroying at pleasure." *Id.* at 1079. In contrast, even if we were to accept *Browder*'s reckless-indifference rule as the law of our circuit, Plaintiff here has not alleged facts to support such a finding of "conscious contempt" by Losleben.

High-speed-chase cases like *Lewis* are, of course, distinguishable from cases like the instant case because an officer engaged in a high-speed chase (like, perhaps, a fireman speeding to the site of a burning dwelling) must make spur-of-the-moment decisions unimpeded by the threat of liability, whereas Losleben, as Plaintiff argues, had occasion to consider whether to speed or drive negligently. But even if that distinction supports a lower culpability threshold for firemen who cause accidents in non-emergency cases than for officers engaged in high-speed pursuits, Losleben's alleged conduct here still falls short of whatever that lower threshold might reasonably be. And because Plaintiff has not stated a § 1983 claim against Losleben, neither can Plaintiff state a claim against Hardin County for municipal liability for a § 1983 violation. *See Collins*, 503 U.S. at 120. The Supreme Court's *Lewis* framework thus decides this case, and the district court was correct to dismiss Plaintiff's complaint for failure to state a claim.

**IV**

In sum, we **AFFIRM** the district court's dismissal of Plaintiff's claims against Losleben and Hardin County.