**Tearra NEWELL, Plaintiff,**

**v.**

**Police Officer John KURYAN, Individually and in his Official Capacity as a City of Chester Police Officer, and City of Chester, Defendants.**

No. CIV. A. 00–3988.

United States District Court, E.D. Pennsylvania.

July 24, 2001.

Jay S. Gottlieb, Philadelphia, PA, for plaintiff.

Andrew B. Adair, Holsten & Associates, Media, PA, for defendants.

### *MEMORANDUM*

PADOVA, District Judge.

This matter is before the Court on Defendant John Kuryan's Motion for Summary Judgment.[1] For the reasons stated below, the Court grants the Motion.

---

1. The Complaint originally brought six counts against one or a combination of the named Defendants. Upon Defendants' Motion to Dismiss, the Court dismissed all of the claims with the exception of Plaintiff's claims against Defendant Kuryan in his personal capacity for violation of the Fourteenth Amendment and for punitive damages.

## I. Background

Defendant Police Officer John Kuryan ("Defendant") went to Plaintiff's residence on August 17, 1998, while responding to a civilian complaint. (Mot. ¶ 2; Resp. ¶ 2.) Plaintiff alleges that Defendant violated her right to substantive due process pursuant to the Fourteenth Amendment to the United States Constitution when he injured her in the course of shooting her dog. The parties do not dispute that a bullet fired by Defendant at the dog ultimately struck Plaintiff's hand.[2] The parties dispute the facts surrounding the shooting. Defendant asserts that he shot the dog after it attacked him. (Def. Mem. Ex. E at 16–27; Def. Mot. ¶ 3.) Plaintiff denies that the dog attacked Defendant. (Pl.Resp.¶ 3.) The dog was a pit bull. (Def. Mem. Ex. D at 78.) Plaintiff's account is as follows:

> I had left work early that day. He started getting loud, started saying well, apparently you said something to them because they made a call. That's when my dog came out the door. My dog went to go lunge at the officer and I grabbed him by his collar. The dog is like heavy so I swung the dog around. The officer stepped back into the bush. As I started taking Rumble inside the house, the officer was still in the bush on my right-hand side. I was in the middle and I had Rumble by my left hand. As we started going in the house, the officer started screaming, get your dog, I'm not going to get bit by your dog. I had Rumble by the collar and we started to go in the house. When the cop started to scream get your dog, I'm not going to

get bit by your dog, Rumbles went to go lunge. He jerked back because I had him by the collar. The officer pulled out his gun and he shot three times. The first time he shot was to let the dog go. When I first, that's when I got on top of my dog and said please stop shooting my dog. . . .

> I got on top of Rumbles and said please stop shooting my dog. As I'm rubbing Rumbles there is blood, the blood kept coming. I said, oh, my God, you shot me, too. He said I didn't shoot you, that's blood from the dog. I said, no, you shot me. He repeatedly said I did not shoot you, that's blood from you dog. I got up, that's when I went in the house to wrap something around my hand. . . .

(Def. Mem. Ex. D at 31–32.)

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Rule 56(c) requires the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265

---

**2.** Plaintiff takes the position that "[o]ne of the bullets passed through the dog and struck plaintiff in the hand." (Pl. Mem. at unnumbered first page.) Defendant takes the position that "[o]ne of the bullets passed through the dog and shattered on the ground. Unfortunately, a shell fragment bounced off of the ground and struck the Plaintiff in the hand." (Def. Mem. at 1.) The difference in theories of the path of the bullet are immaterial to resolution of this Motion. The parties agree that Defendant was the source of the bullet, and the bullet struck Plaintiff.

(1986). The movant in that case is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing with respect to an essential element of its cause of action. *Id.* The party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Rule 56(e) requires the nonmoving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories and admissions on file, to designate specific facts showing a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

Under Rule 56, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Discussion

Defendant argues that he is entitled to judgment as a matter of law because Plaintiff has failed to offer evidence that Defendant acted with the requisite mental state to establish a violation of Plaintiff's Fourteenth Amendment right to substantive due process. (Def. Mem. at 12.) Defendant argues that *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), announces that intent to cause the harm is the mental state a plaintiff must prove in a Fourteenth Amendment substantive due process violation against a state actor "in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation." (Def. Mem. at 14.) Alternatively, Defendant argues that he is entitled to "qualified/good faith immunity from suit." (Def. Mem. at 17.)

Plaintiff apparently, though not expressly, disagrees with Defendant's interpretation of the mental state she must prove to establish a Fourteenth Amendment substantive due process violation. Plaintiff's Memorandum states:

> Plaintiff's position is that Defendant acted with 'deliberate indifference' (see *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1988, 140 L.Ed.2d 1043)—much the equivalent of intentionally, knowingly, or recklessly causing serious bodily injury under circumstances manifesting extreme indifference to the value of human life and/or causing bodily injury with a deadly weapon.[3]

(Pl. Mem. at unnumbered third page.)

Initially, the Court rejects the patently erroneous assertion that deliberate indifference is an equivalent mental state to intent or knowledge. Next the Court considers whether the mental state that Plaintiff alleges, deliberate indifference, suffices

---

**3.** Plaintiff's reference to the mental states of "intentionally, knowingly, or recklessly causing serious bodily injury under circumstances manifesting extreme indifference to the value of human life and/or causing bodily injury with a deadly weapon" allude to the Pennsylvania aggravated assault statute.

to establish a substantive due process violation. If not, Plaintiff's claim fails as a matter of law.

■ The Fourteenth Amendment's guarantee of due process has as its core the protection of the citizen against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Due process in the substantive sense protects against government power arbitrarily and oppressively exercised. *Id.* at 846, 118 S.Ct. 1708 (citing *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). The cases of the United States Supreme Court "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* (citing *Collins v. Harker Heights*, 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Accordingly, the "cognizable level of executive abuse of power" required to establish a claim for violation of substantive due process is "that which shocks the conscience." *Id.*

In *Lewis*, the Supreme Court examined the levels of culpability that might satisfy the shocks-the-conscience standard, ultimately holding that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.* at 854, 118 S.Ct. 1708. Defendant interprets *Lewis* to stand for a broader rule that "in rapidly evolving, fluid and dangerous situations which preclude the luxury of calm and reflective deliberation, a state actor's action will shock the conscience only if the actor intended to cause the harm." (Def. Mem. at 14). *Lewis*, however, does not support this broad an interpretation. *Lewis* expressly confines its holding to the circumstances of high-speed police chases. *See Moreland v. Las Vegas Metropolitan Police Dep't*, 159 F.3d 365, 372 (1998) ("the Supreme Court limited its holding in *Lewis* to the facts of that case i.e., to high-speed police chases ...."). Federal courts have applied the rationale of *Lewis* in contexts other than police high-speed pursuits. *See Gillyard v. Stylios*, No. CIV.A.97–6555, 1998 WL 966010, at *4–5 (E.D.Pa. Dec.23, 1998) (cataloguing cases). The statement of the broader rule that Defendant asserts is not necessary, and even in conflict with *Lewis*, which commands specific analysis of the facts of a substantive due process claim under the shocks-the-conscience standard.

As *Lewis* instructs, the "constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Lewis*, 523 U.S. at 848, 118 S.Ct. 1708. The guarantee of substantive due process "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* Negligent conduct categorically fails to meet the conscience-shocking standard. *Id.* at 848–49, 118 S.Ct. 1708. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849, 118 S.Ct. 1708. The middle range of culpability is a zone requiring specific analysis.

Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, ... is a matter for closer calls....

Rules of due process are not, however, subject to mechanical application in unfamiliar territory. Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking.

*Id.* at 849–50, 118 S.Ct. 1708 (internal quotation marks and citation omitted). Accordingly, the Court will analyze the facts adduced by Plaintiff to determine whether they support her claim that Defendant's alleged deliberate indifference in this context shocks the conscience.

Before proceeding to the facts of this case, the Court returns to *Lewis* for its extensive instruction on the level of culpability that shocks the conscience. Looking to precedent, the Court distinguished and analogized the circumstances of the high-speed police chase in the case at bar with the circumstances of state actors responsible for the medical needs of pretrial detainees and prison guards in the face of a prison riot, respectively. The Court focused on two considerations: the opportunity to deliberate and the pull of conflicting duties. "As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical." *Id.* at 851, 118 S.Ct. 1708 (citing *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Thus, "in the custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare." *Id.* Additionally, the "responsibility to attend to the medical needs of prisoners [or detainees] does not ordinarily clash with other equally important governmental responsibilities." *Id.* at

851–52, 118 S.Ct. 1708. Thus, deliberate indifference to the medical needs of pretrial detainees was sufficiently egregious to state a substantive due process claim. *Id.* at 849–50, 118 S.Ct. 1708 (citing *City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)).

By contrast, the circumstances of prison guards confronted with a violent disturbance afforded no time for deliberation and posed conflicting demands:

[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.... In this setting, a deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance.

*Id.* at 852, 118 S.Ct. 1708 (quoting *Albers*, 475 U.S. at 320, 106 S.Ct. 1078). Accordingly, the Court in *Albers* held that the standard of liability under the Eighth Amendment was "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 853. The circumstances of the high-speed police chase presented in *Lewis* were analogous, the Court stated, and imposed a standard of liability for a substantive due process violation requiring intent to harm. *Id.* at 853–54, 118 S.Ct. 1708.

Like prison officials facing a riot, the police on an occasion calling for fast

action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance." . . .

To recognize a substantive due process violation in these circumstances when only midlevel fault has been shown would be to forget that liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.

*Id.*

■■ In the instant case, the Court cannot conclude that the alleged deliberate indifference of Defendant shocks the conscience. Under Plaintiff's version of events, Defendant, backed up into a bush, shot a pit bull that was attempting to lunge at him against the grasp of Plaintiff, who was holding the admittedly heavy dog by the collar. Like the conduct of the motorcycle driver who led police in *Lewis* on a high-speed chase, the pit bull's lunging was "practically instantaneous," as was Defendant's "instinctive response." *See id.* at 855, 118 S.Ct. 1708. The circumstances confronting Defendant placed him at significant personal risk and demanded immediate reaction. He was caught between the competing demands of his own safety, which was threatened by the pit bull, and the safety of others, which would be jeopardized by a discharge of his weapon. Plaintiff has adduced no evidence suggesting that Defendant intended to injure Plaintiff, and expressly states that she maintains that Defendant acted with delib-

erate indifference. However, Defendant did not have the luxury of time to make an unhurried judgment as to the best way to avoid the risk posed by the dog. In the immediacy of the confrontation with the pit bull, Defendant had little, if any, opportunity to deliberate. Under these circumstances, his decision to shoot the dog does not shock the conscience. At most Defendant's conduct exhibits a mistake of judgment and indifference to Plaintiff's safety. Defendant's conduct simply does not rise to the level of the most egregious abuse of executive power that can be said to be arbitrary in the Constitutional sense. Plaintiff's claim therefore fails as a matter of law.

## IV. Conclusion

Having failed to set forth specific facts that could show at trial that Defendant's conduct shocks the conscience, Plaintiff has failed to make a showing sufficient to establish an element essential to her claim for substantive due process deprivation under the Fourteenth Amendment, on which she bears the burden of proof at trial. The Court need not address the parties' arguments with respect to qualified immunity. Furthermore, as the Court concludes that no constitutional violation has occurred, Plaintiff is not entitled to punitive damages. Defendant therefore is entitled to judgment as a matter of law on the two outstanding counts in the Complaint. An appropriate Order follows.