Eric Von DEAN Plaintiff–Appellant,

v.

CITY OF LOUISVILLE, doing business as Metropolitan Narcotics Unit, and as Louisville Police Department; et al. Defendants–Appellees.

No. 01–5078.

United States Court of Appeals, Sixth Circuit.

Nov. 8, 2002.

Before DAUGHTREY, MOORE, Circuit Judges, and ECONOMUS, District Judge.*

## OPINION

ECONOMUS, District Judge.

### I. OVERVIEW

Plaintiff, Eric Von Dean appeals the district court's entry of summary judgment in favor of the defendants in this § 1983 ac-

---

* The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

tion. The district court concluded that Dean failed to establish a genuine issue of material fact as to whether his arrest on cocaine trafficking charges was supported by probable cause.[1]

In support of their motion for summary judgment, the defendants produced evidence that at least two officers identified Von Dean (*albeit* incorrectly) as the suspect videotaped making two cocaine sales to an undercover officer. On the other hand, the district court found that Dean has produced no affirmative evidence in support of his argument that all of the identifications took place *following* his arrest on the drug charges. We find no reversible error and affirm.

## II. BACKGROUND

From late 1997 through early 1998, Metro Narcotics, a joint operation of the Louisville Police Department ("Louisville" or "Louisville PD") and the Jefferson County Police Department ("Jefferson County" or "Jefferson County PD"), conducted an investigation of alleged drug trafficking activities in various parts of Jefferson County, Kentucky, including the "Shagbark" area.

As part of the investigation, Louisville PD videotaped Defendant Louisville Officer Theresa Spellman purchasing drugs from street-level dealers. On November 5, 1997, Spellman, under the supervision of Defendant Louisville Officer Brian Nunn, made two purchases from a "John Doe" dealer in the 3400 block of Shagbark. *See, e.g.,* Joint Appendix ("J.A.") at 153–54.

Defendant Jefferson County Officer Richard Blumeier, the officer assigned to the police district encompassing the Shagbark area, identified the dealer as Eric Von Dean.[2] *See* J.A. at 583, 622. Blumeier had assisted in executing a search warrant at Von Dean's apartment on a prior occasion and, therefore, was familiar with Dean's appearance. *See* J.A. at 677–78.

In addition, Defendant Jefferson County Officer Barry Denton testified at his deposition that he identified the dealer on the videotape as Eric Von Dean in either December 1997 or January 1998. *See* J.A. at 686. Like Blumeier, Denton had been assigned in the past to the Shagbark area and was familiar with Von Dean's appearance.

However, there is also evidence in the record that Denton identified the dealer on the videotape as Dean *after* Dean's lawyer approached the prosecution claiming that Dean was innocent, that is, *after* May 1998. *See, e.g.,* J.A. at 627. *See also* J.A. at 334 (Resp.Req.Admis.)(admitting "[t]hat Mr. Dean stood under indictment at the time Officer Denton made his identification of Mr. Dean from the videotaped drug transaction" but denying same with respect to Blumeier's identification).

After Blumeier identified the dealer on the videotape as Dean, Nunn presented a mug shot of Dean to Spellman. Based on the mug shot, Spellman also identified Dean as the dealer from the November 5, 1997 transactions. *See* J.A. at 580, 623.

---

1. In their motion practice, the parties each briefed the issue of whether Dean's complaint alleged his constitutional claims against the non-municipal defendants in their individual or official capacities. Insofar as the district court found that no constitutional violation had occurred, the court did not find it necessary to resolve the individual/official capacity issue.

2. In his deposition, Blumeier testified that, "[T]hey played the video of where they'd made some controlled buys, they paused it on a picture and said we don't know who this is, the buy was made at 3405 Shagbark. I viewed it, I said it looks like Eric Von Dean." J.A. at 675.

Although neither Blumeier nor Spellman was able to state with specificity the date when they identified Dean,[3] they both testified that their identification of Dean was made *prior* to Von Dean's arrest in April 1998 and subsequent indictment in May 1998. *See* J.A. at 574 (Spellman Dep.);[4] J.A. at 623 (Nunn Dep.); J.A. at 674–A (Blumeier Dep.).

At some point in April 1998, Defendant Jefferson County Detective Steve Farmer received a tip that Dean had information regarding the whereabouts of a homicide suspect in an unrelated matter. *See* J.A. at 609. Farmer then learned that Dean had been identified in Metro Narcotics' drug investigation, which had not resulted in any indictments due to the undercover nature of the work. Farmer contacted Nunn to determine whether Nunn would object to Dean's arrest on the two drug transactions. It is undisputed that Dean was arrested by Farmer in order to facilitate his questioning in the homicide investigation. *See* J.A. at 610; *see also* J.A. at 623. Farmer arrested Dean on April 30, 1998. *See* J.A. at 611–13.

Although he was subsequently released on bond, Dean was indicted on the drug charges and arrested a second time on a bench warrant based on the pending indictment in May, 1998. In July 1998, Dean was released from jail under the Home Incarceration Program, with Work Release privileges. *See* J.A. at 16.

While Dean was awaiting trial, his lawyer contacted the Prosecutors Office to inform the prosecutor assigned to the case that Dean was, in fact, innocent of the charges. *See* J.A. at 665. In fact, Dean's lawyer provided the prosecutor with the name and a photograph of the dealer captured on the November 5, 1997 videotape—Darrell Smith. *See* J.A. at 637. As a result, the prosecutor instructed Nunn to look into Dean's claim that it was Smith who was the dealer videotaped making the sales to Spellman on November 5, 1997. After Nunn confirmed that it was Smith, rather than Dean, on the videotape, the charges against Dean were dropped. J.A. at 638–39.

Dean subsequently sued in state court the City of Louisville, the Fiscal Court of Jefferson County, Nunn, Spellman, Blumeier, Denton, and Farmer for violating his constitutional right to be free from unlawful arrest and made a number of state-law tort claims. After removal to federal court, the district court granted the defendants summary judgment on Dean's § 1983 claim on Oct. 20, 2000. *See* J.A. at 540 (Order); J.A. at 10 (Docket).[5]

The district court flatly rejected Dean's argument that, based upon the police officers' inability to recall the specific dates on which they identified Dean, an inference could be drawn that the identifications did not take place *prior* to his arrest. The district court concluded that there was

---

3. The record does not provide any indication of the specific dates on which Blumeier, Denton, or Spellman identified Dean as the dealer on the videotape. The Metro Narcotics reports do not indicate the specific dates on which the identifications were made. *See* J.A. at 147, 148 (identifying dealer as Eric Von Dean).

4. In her deposition, Spellman offered an interesting explanation for the record's lack of a specific date for her identification of the sus-

pect from the mug shot. Spellman testified that the date of her identification would have been recorded on the back of the mug shot used to identify the suspect, but that, subsequent to Dean's arrest, the mug shot in the file would have been updated with a new photograph. Thus, the mug shot with the date of Spellman's identification was no longer available. *See* J.A. at 579–80.

5. The district court remanded Dean's state-law claims to state court. *See* J.A. at 540–41.

simply no affirmative evidence to support this inference. *See* J.A. at 538.

The court also rejected Dean's argument that reliance on the police officers' identifications was unreasonable. *See* J.A. at 538. Because Dean had failed to produce facts from which a rational trier of fact could infer that the police lacked probable cause to arrest him, the district court held that he could not prevail on his constitutional claim. *See* J.A. at 539 ("Because plaintiff has failed to show that a genuine issue of material fact exists with regard to a violation of his constitutional rights, it is unnecessary to address defendants' responsibility for such a violation.").

In his motion for reconsideration, Dean argued that the district court failed to consider a number facts in the record, including (1) the conflicting testimony regarding when Denton identified Dean on the videotape; (2) the lack of any notation in the Metropolitan Narcotics Unit file regarding any identifications made by any police official at any time during the investigation; (3) the fact that such police officer identifications, if they had been made, would have been recorded in the Metropolitan Narcotics Unit investigative file; (4) the lack of any knowledge by the prosecutors assigned to the case of any identifications made by Officers Denton or Blumeier prior to June of 1998; (5) the lack of any notation in the discovery tendered in the criminal case of Officers Blumeier and Denton as prosecution witnesses prior to June of 1998. J.A. at 549–50.

However, the district court denied the motion for reconsideration on January 5, 2001, citing the reasons stated in the original memorandum opinion and order. *See* J.A. at 556–57. This appeal followed.

## III. ANALYSIS

This court reviews the grant of summary judgment *de novo*. As this court explained in *Employers Insurance of Wausau v. Petroleum Specialities, Inc.,* 69 F.3d 98 (6th Cir.1995):

> The moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only " 'show[ ]'—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case. *Celotex,* 477 U.S. at 322. The plaintiff must present more than a scintilla of evidence in support of his position; the plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (quoting *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)).

*Id.* at 102 (parallel citations omitted).

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

■ The first inquiry in this case, therefore, is whether Dean has been deprived of a right "secured by the Constitution and laws." *Williams v. Bass,* 63 F.3d 483, 485 (6th Cir.1995); *See also Collins v. Harker*

*Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). In making this determination, Dean's claim must be "judged by reference to the specific constitutional standard which governs that right". *Bell v. Johnson,* 308 F.3d 594 (6th Cir.2002)(citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). If there has been such a deprivation, then the second inquiry is whether the defendants are responsible for it. *Collins,* 503 U.S. at 120. However, if there has been no deprivation, then Dean may not recover under § 1983. *Rossborough Manufacturing v. Trimble,* 301 F.3d 482, 485 (6th Cir.2002); *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).

In order to comply with the Fourth Amendment, the arrest of an individual must be "objectively reasonable." U.S. Const. Amend. IV; *Graham,* 490 U.S. at 388, 396–97. An arrest is reasonable if it is supported by probable cause. *Giordenello v. United States,* 357 U.S. 480, 485–86, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

"Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed a crime." *United States v. Maguire,* 918 F.2d 254, 258 (1st Cir.1990), *cert denied, Kavanaugh v. United States,* 501 U.S. 1234, 111 S.Ct. 2861, 115 L.Ed.2d 1027 (1991). Therefore, Dean must show that his arrest was unreasonable in order to prevail under § 1983.

In his appeal, Dean argues that the defendants acted without probable cause to "arrest, detain, charge and prosecute" him because of the "absence of any identification (proper or otherwise) ... during any phase of the criminal matter before June of 1998." Dean's contends that in order to question him about the unrelated homicide,

Farmer arrested him on drug charges, and, only after his arrest, did the officers in question identify him on the videotape. Appellant's Br. at p. 37. ("The identification of [Dean] as the suspect in Metro narcotics file 97–1437 was accomplished for the collateral improper purpose of coercing information these [defendants] believed Dean possessed regarding an unrelated murder investigation.")

In order to substantiate this claim, Dean cites the failure of the Metro Narcotics reports to indicate when Dean was identified as the "John Doe" dealer on the November 5, 1997, videotape, coupled with the confusion over the Denton identification and the fact that the prosecutors in the case were not aware of either the Blumeier or Denton identifications of Dean. Taken together, Dean concludes that a reasonable trier of fact could infer that the police had not identified Dean as the "John Doe" dealer prior to his April 1998 arrest.

It is undisputed that Dean was arrested and detained because Farmer believed that he had information regarding the unrelated homicide investigation. However, the fact that Farmer arrested Dean in order to question him about a homicide that was not related to the charges on which the arrest itself was based, in isolation, does not raise any constitutional concerns. "If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant." *See Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988).

■ The issue, then, is whether Farmer had probable cause to arrest Dean on April 30, 1998. *See, e.g., Klein v. Long,* 275 F.3d 544 (6th Cir.2001). *See generally Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (holding that § 1983 plaintiff cannot establish a Fourth Amendment violation where police had

probable cause to arrest and detain him). The insuperable problem for Dean in the present case is that Spellman and Blumeier testified that they identified Dean prior to his first arrest on the drug charges.

Spellman, for example, testified in her deposition that she identified Dean from the videotape "[v]ery soon" after the buy in question. J.A. at 574. Spellman also testified that her identification was based on the mug shot of Dean that Nunn showed to her *after* Blumeier identified Dean from the videotape. J.A. at 583–84. Even if Blumeier was unable to give a date for his identification, the record places that event "very soon" after November 5, 1997. Moreover, because Spellman was an "eyewitness" to the controlled drug buy, her identification of the "John Doe" dealer as Dean was sufficient to establish probable cause under these circumstances. *See Ahlers v. Schebil,* 188 F.3d 365, 370 (6th Cir.1999).

An eyewitness identification will constitute sufficient probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the. eyewitness 'was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.' " *Id.* This comports with the general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity. *Id.* There is no evidence in the record to suggest that Spellman was lying, did not accurately describe what she had seen, or was in some fashion mistaken regarding her recollection of the confrontation.

As mentioned in section II *supra,* there is conflicting evidence in the record as to when Denton identified Dean on the videotape. But this contrary evidence is not material to summary judgment because the defendants have produced facts sufficient to establish probable cause without Denton's testimony. Moreover, although the contradictory evidence in the record diminishes the credibility of Denton's testimony, it does not have the same effect on Blumeiere and Spellman's testimony.

Furthermore, on appeal, Dean acknowledges that the defendants began to treat him as a suspect on *December 3, 1997. See* Appellant's Br. at 35 ("These Defendant–Appellees did not secure an identification of [Dean] prior to their decision on or about December 3, 1997 to list him as the suspect in the November 5, 1998 drug transaction"). However, Farmer did not arrest Dean in order to interrogate him about the unrelated homicide investigation until April 30, 1998. In other words, Dean's theory would require the hypothetical trier of fact to infer that the police listed Dean as a suspect in the November controlled buy on December 3, 1997, with an eye toward picking him up on an unrelated homicide investigation *almost five months later.*

Therefore, we believe that Dean's theory of the case requires unreasonable inferences which are not supported by the facts adduced in this case. Moreover, shoddy record-keeping by Metro Narcotics' is, without more, insufficient to create a genuine issue of material fact because of the testimony of Blumeier and Spellman. In other words, the investigative file neither corroborates nor contradicts the testimony in this case. Consequently, the district court properly granted summary judgment in favor of the defendants on Dean's wrongful arrest and indictment claim based upon the officers' testimony.

Finally, Dean challenges Metro Narcotics' reliance on Blumeier's identification. Dean argues that Blumeier and Denton were "outside officers," that is, not working within the Metro Narcotics operation. Dean concludes that it was unreasonable for Metro Narcotics officers to rely on the identification of Dean by Blumeier, be-

cause "[t]here did not exist, among these officers, the prior history of cooperative investigations which might have made reliance by [the defendants, Nunn and Spellman] objectively reasonable." Appellant Br. at p. 33–34. However, we believe that it was reasonable for Metro Narcotics to rely on the identification of a suspect by a member of law enforcement, particularly an officer familiar with the inhabitants of an area in question. This is true despite the fact that the officer was not a member of the Metro Narcotics team.

## V. CONCLUSION

For the foregoing reasons, the opinion of the district court granting summary judgment in favor of the Defendants is **AFFIRMED**.