*230 OPINION
AMBRO, Circuit Judge.
In this tragic case, Princeton Township Police Officers fatally shot Jelani Mani-gault while attempting to arrest him. Manigault’s parents, Carol and Andrew, brought this action under 42 U.S.C. § 1983, asserting that the officers used excessive force and approached their son in a manner that violated his Fourth Amendment rights. The District Court granted summary judgment in favor of the officers, ruling that they were entitled to qualified immunity. We affirm.
I.
In the early hours of January 23, 2003, the Princeton Township Police received an emergency call from Mrs. Martha Sword. She informed them that an intruder had entered her home and was attacking her husband and brother. The intruder, Mani-gault, had crashed his car into a tree on the Sword’s property and entered to their home when Mr. Sword opened the door to see if Manigault needed help. Once inside, Manigault, who was wearing no jacket or shoes, grabbed a knife from the kitchen and began stabbing Mr. Sword. Mrs. Sword’s brother, Robert Sullivan, came to Mr. Sword’s aid and helped him force Manigault outside. Manigault, however, reentered the house, regained control of the knife, and began slitting his wrists. At this point, Sullivan forced him back outside and secured the doors.
Officers Judd Petrone and Harry Martinez arrived at the driveway of the Sword’s home about the same time that Sullivan managed to lock Manigault outside. After inspecting Manigault’s crashed car, the officers began walking toward the Sword’s home. Meanwhile, Officers Fred Williams and Christopher King arrived and followed Petrone and Martinez up the Sword’s driveway.
Officer Martinez was the first to spot Manigault. He ordered him to “drop the knife,” and pursued him into the Sword’s densely wooded yard. The other officers hurried to join Martinez and encircle Man-igault. Relying on their flashlights for light, the officers continuously commanded Manigault, who was covered in blood, to drop his knife.
After some time, Manigault turned his back to the officers. Thinking that he was submitting, Officers Martinez and Petrone began to approach him. As they closed to within fifteen feet, however, Manigault spun around, faced Officer King, and stated, “Go ahead and kill me” or “YouTe going to have to kill me.” He then charged King with the knife. Backing up, King tripped on a tree stump and fell to the ground. As Manigault continued his charge, King fired his gun.
Hit with King’s bullet, Manigault bent from the waist and turned toward Martinez with knife in hand. At this point, King was prepared to fire more shots but lost sight of Manigault, and Petrone was prevented from firing because Martinez was in his line-of-fire. Martinez then fired two quick shots at “almost the exact same time” as King’s shot. One of these shots killed Manigault.
Manigault’s parents filed this suit against the officers, Township, and other entities, alleging, among other things, a § 1983 claim stemming from the officers’ asserted use of excessive force and unreasonable actions. The officers moved for summary judgment, arguing that they were entitled to qualified immunity. The District Court granted the motion. See Manigault v. King, No. 05-0422, 2008 WL 3887609, at *5-6 (D.N.J. Aug.21, 2008). The Manigaults appealed.
*231 II.
The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.
Our review of the District Court’s grant of summary judgment is plenary, “but we must view the facts in the light most favorable to the non-moving party.” Fontroy v. Beard, 559 F.3d 173, 177 (3d Cir.2009). Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. See Celotex Coup. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
III.
Manigault’s parents argue that we should vacate the District Court’s grant of summary judgment because the Township officers used deadly force and unreasonably approached their son in violation of his Fourth Amendment rights.[1] The officers respond that they are entitled to summary judgment based on qualified immunity because their actions were objectively reasonable under the circumstances.
Qualified immunity shields government officials from civil damages liability “insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under Saucier v. Katz, we typically resolve qualified immunity claims under a two-step test, deciding (1) whether facts alleged or shown make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant’s misconduct. 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Supreme Court, however, held in Pearson v. Callahan that “courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.” Pearson v. Callahan, — U.S. -, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). The District Court’s decision, rendered before Pearson, addressed the first step — whether the Township officers’ use of deadly force was unconstitutional. We see no reason, post-Pearson, to alter that approach here.
A police officer’s use of deadly force is permissible only if it is objectively reasonable under the circumstances. See Graham v. Connor, 490 U.S. 386, 399, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Assessing the reasonableness of an officer’s use of deadly force requires careful attention to “the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, ... whether he is actively resisting arrest or attempting to evade arrest by flight, ... the duration of the officer’s action, ... the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.” Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir.2006) (internal citations omitted).
Viewing the facts in the light most favorable to the Manigaults, we conclude, as the District Court did, that the Township officers’ use of deadly force was objectively reasonable under the circumstances. At the time he was shot, Manigault had stabbed a man and invaded a home. He was covered in blood, armed with a deadly weapon, did not respond to commands, and was in the process of lunging at an officer who had fallen to the ground. To be sure, *232 Manigault’s lack of a jacket or shoes and slit wrists may have given the officers some indication that he was mentally unwell, but given the darkness of the scene and brief time period in which it unfolded, these indicators could not control the officers’ actions. Moreover, the fact that Manigault bent from the waist and turned after King’s bullet struck him did not make it unreasonable for Martinez to fire his weapon at a nearly simultaneous time. Thus, no genuine issues of material fact exist over whether the officers used deadly force in an objectively unreasonable manner.
In addition, the Manigaults’ claim that the officers approached them son in a way that violated his Fourth Amendment rights must fail. Although the officers were trained to maintain a distance of at least 21 feet when facing a suspect carrying a knife, their abandonment of this protocol cannot form the basis for a remedy under § 1983 or deprive them of qualified immunity. See Collins v. City of Harker Heights, 503 U.S. 115, 119, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (holding that § 1983 does not provide a remedy if there is no violation of federal law); Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (noting that officials do not lose qualified immunity where they violate administrative directives). Furthermore, under the circumstances, it was reasonable for Martinez and Petrone to approach Manigault, who had turned his back on them and appeared to be submitting to their commands.
* * * * * ❖
For these reasons, we affirm the District Court’s grant of summary judgment.

. On appeal, the Manigaults do not press any of their previously raised state claims or their § 1983 claim against the Township and other entities. These claims are thus waived. See Kopec v. Tate, 361 F.3d 772, 775 n. 5 (3d Cir.2004).